## A01A2207. MONTFORD v. THE STATE.
### (564 SE2d 216)

POPE, Presiding Judge.

John Montford was convicted and sentenced on one count each of aggravated assault on a police officer, serious injury by motor vehicle, fleeing or attempting to elude a police officer, interference with government property, reckless driving, and speeding. He challenges his conviction of aggravated assault on several grounds related to the argument that proof of that crime cannot be based upon mere criminal negligence.

Construed in favor of the verdict the relevant evidence shows that at about 4:45 a.m., police were called in response to allegations that Montford was harassing his former girlfriend in violation of a restraining order. Deputy Sheriff Robinson went to the woman's home, and while the deputy was attempting to investigate, Montford fled in his car without activating his headlights. Robinson attempted to stop Montford by waving a flashlight, but had to step out of the

---

[31] *Curtis v. State*, 212 Ga. App. 237, 239 (4) (441 SE2d 776) (1994).

road to avoid getting hit. Robinson had been on foot in the dark and could not say whether Montford saw him. Robinson called for help, and Officer Searcy, who was located in the direction that Montford was headed, responded to the call. Searcy placed his marked patrol car in Montford's path, but not in such a way as to completely block the road, and turned on his emergency lights and blinking headlights. Montford drove past Searcy at about 35 or 40 mph and turned left onto Georgia Highway 96. Searcy activated his siren and pursued Montford. Searcy reached speeds of between 120 and 125 mph while chasing Montford for about six miles but never caught up. (He testified that Montford reached those speeds as well.)

Searcy called for more help, and Officer Gibson responded by coming down Highway 96 directly toward Montford in his patrol car. At one point, having yet to see Montford approaching, Gibson activated his emergency lighting and started to turn around in order to follow Montford when he passed. But seconds later, Montford crashed into Gibson's patrol car seriously injuring Gibson and himself. There were no skid marks found on the pavement prior to the impact site. Montford was charged with aggravated assault on a police officer based on this collision.

1. Montford contends there was insufficient evidence to support the conviction of aggravated assault. Aggravated assault requires proof of certain aggravating circumstances and an assault. OCGA § 16-5-21. Assault requires showing either that the defendant attempted to injure someone, OCGA § 16-5-20 (a) (1), or that the victim was in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2). See *Dunagan v. State*, 269 Ga. 590, 591 (2) (502 SE2d 726) (1998). Montford urges that the State failed to show either.

According to the Supreme Court, the intent to injure necessary to support a conviction under subsection (a) (1) cannot be satisfied by a showing of criminal negligence on the part of the appellant. *Dunagan*, 269 Ga. at 591-592 (2) (a). See also *Bowers v. State*, 177 Ga. App. 36, 37-38 (1) (338 SE2d 457) (1985). In other words, no matter the degree, a wanton or reckless state of mind cannot be considered the equivalent of the specific intent to injure necessary to sustain this type of aggravated assault.

We disagree with this position and agree with Justice Carley's reasoning in his dissent in *Dunagan*. Justice Carley would hold that criminal negligence can substitute for the intent to injure in the crime of aggravated assault with a deadly weapon. Id. at 595 (Carley, J., dissenting). It stands to reason that Montford knew that his reckless and illegal conduct was likely to injure another person or result in the destruction of life. He was driving without lights, speeding, eluding an officer, and driving in a reckless manner. While engaging

in this reckless behavior, his car crashed into Officer Gibson's patrol car and injured Gibson. Montford clearly recklessly disregarded the consequences of his actions and was heedlessly indifferent to the rights and safety of others. And reasonable foresight tells that injury would probably result. Thus, he intended to commit the unlawful acts which proximately resulted in serious injuries to another. In our view he had sufficient intent to support a conviction of aggravated assault with intent to injure.

Nevertheless, we are constrained to follow the holding of the majority in *Dunagan*, and, therefore, something more is required. To sustain a charge of aggravated assault under subsection (a) (1), the attempted or completed injury to the victim must be the intended consequence of the defendant's act. *Dunagan*, 269 Ga. at 592 (2) (a). Thus, the question here is whether there was sufficient evidence from which a rational juror could have found beyond a reasonable doubt that Montford intended to injure Officer Gibson or that, under subsection (a) (2), prior to the collision Gibson saw Montford about to hit him. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Montford denied intentionally trying to hit Gibson's patrol car or injure him. He claimed that he looked away for a moment and when he looked up there was a car in front of him that he hit. He admitted that he was going at least 85 mph and not paying attention to where he was going.

Officer Searcy was about one-half mile behind Montford at the time of the accident. He saw Gibson coming toward Montford. He testified that "[Gibson] went to turn around and that's when the defendant ran into him." Searcy saw that Gibson had his blue lights on. Searcy could not tell whether Montford was proceeding straight along the road. But he did admit that Montford was in his lane, the eastbound lane, when the accident occurred, and not on the shoulder of the road. Searcy could not say whether Gibson had pulled in front of Montford during his attempt to turn around. But he admitted that, because the road had only two lanes, Gibson would have necessarily blocked Montford by attempting to turn around. Searcy testified, "In my opinion when [Gibson] went to turn around he misjudged how fast [Montford's] vehicle was going, and that's when he —." Searcy did not complete his thought.

Gibson testified that he turned his blue lights on and was preparing to turn around in a straight section of the road to join the chase. As for the accident he said the following: "My intentions were to pull over, turn my vehicle around and get set up. At that point I started my turn around and I was hit. I never did see the car coming before I even begin [sic] to turn around. When I was trying to turn

around that's when I was hit. . . ." On cross-examination, this exchange occurred:

> Q. So, why, if you were not pursuing anyone, why would you turn on your emergency lights?
> A. I turned them on because they was coming toward me with the chase.
> Q. Okay. I thought you didn't see him?
> A. I didn't say I seen him. I said they were coming towards me with the chase. I was in the process of turning my vehicle around so therefore I turned my blue lights on.

Finally, Gibson did not recall exactly where he was when he was hit.

Applying *Dunagan*, this evidence is insufficient to support a conviction of aggravated assault under the *Jackson* standard. See *Jackson*, 443 U. S. at 307. There is no evidence that Montford intended to hit Gibson's patrol car. As stated above, neither reckless nor negligent conduct is sufficient to sustain his conviction. Thus, the fact that Montford was speeding, eluding police, and not paying attention does not amount to intent to harm Gibson. *Black v. State*, 222 Ga. App. 80 (473 SE2d 186) (1996), is distinguishable. In that case, while speeding and attempting to elude law enforcement officers, Black made several attempts to ram one police car. Then, while he was in full control of his car, Black sideswiped another police car while turning his own. Id. at 80-81. These and other facts described in that opinion provide evidence of Black's intent to harm. Id. at 81 (1). There are no such facts here. The one incident that might suggest such an intent, forcing Deputy Robinson to step off the road when Montford initially fled from his former girlfriend's property, is inconclusive. Even Robinson admitted that he could not be sure that Montford saw him in the dark, and Montford did not have his lights on.

One could argue that surely Montford saw Gibson's emergency lights; therefore, he must have had an opportunity to avoid the collision, but he chose not to do so (as is evidenced by the lack of skid marks before the accident site). But the facts on which this argument is based are too speculative to allow a rational juror to conclude beyond a reasonable doubt that that is what happened. Compare *Cline v. State*, 199 Ga. App. 532 (405 SE2d 524) (1991) (evidence supported conclusion in a high-speed chase that after first attempting to avoid police car, defendant turned back toward car).

(b) Nor is there evidence sufficient to show that Gibson apprehended that he was in danger of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2). There is simply no affirmative evidence that he saw Montford approaching. The State argues that Gib-

son's testimony leaves room for the possibility that although he did not see Montford prior to beginning the turn, he did see him during his turn. But, speculation alone does not satisfy the *Jackson* standard. See generally *Brooks v. State*, 206 Ga. App. 485, 487 (1) (425 SE2d 911) (1992). Further, there was no evidence that Montford turned into Gibson or left his lane prior to the accident.

Montford's conviction of aggravated assault must be reversed.

2. Because each of Montford's remaining enumerations challenge his trial counsel's effectiveness with regard to requesting jury charges related to the aggravated assault charge, those enumerations are moot.

*Judgment reversed in part. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 27, 2002.

*Davis & McPhail, Robert S. McPhail,* for appellant.
*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney,* for appellee.