A05A0187. YOUNG v. THE STATE.
(614 SE2d 257)

SMITH, Presiding Judge.

Following a bench trial, Marvin Dale Young was convicted of one count each of aggravated assault upon a peace officer, resisting, obstructing or opposing a law enforcement officer, reckless driving, fleeing or attempting to elude a police officer, parking outside of a business or residential district, driving on a suspended or revoked license, and no proof of insurance. His motion for new trial as amended was denied, and he appeals. Young contends that the evidence was insufficient to support the aggravated assault conviction and that he did not knowingly and intelligently waive his right to a jury trial. We find no error, and we affirm.

1. Young contends that the evidence was insufficient to convict him of aggravated assault. Construed in favor of the verdict, evidence was presented that the victim, a patrol officer with the City of Columbus Police Department, initiated a traffic stop of Young's car.

Young pulled into a vacant parking lot next to an apartment building and exited his vehicle as soon as it stopped. The victim left his patrol vehicle and ordered Young back inside his own car. Young refused to comply, becoming verbally "belligerent and hostile." The victim asked Young to reenter his vehicle several times, without success. Because Young's hostility continued to escalate, the victim decided to handcuff Young for both his own and Young's safety. While the victim was holding Young's right wrist and attempting to handcuff him, Young broke away and began "swinging" at the victim "with closed fists." The victim backed away, "fending off his blows with both hands and pushing him off." The victim began to draw his weapon. He testified that "at that point I was going to employ deadly force. I didn't know what was going on, but I knew it wasn't going well for me because he was continuing his advance on me."

Young "took off running," the victim holstered and secured his weapon, and a "very short foot pursuit" ensued. Young and the victim ran behind the apartment complex, and Young made a "U turn . . . and he doubled back and he re-entered his vehicle." The victim drew his gun, pointed it toward Young, and positioned himself approximately 20 feet away from the vehicle, in front of the vehicle's left headlight. He commanded Young not to move. Young "mouthed something" and then "took off," with the victim "[s]tanding right in front of his vehicle." When asked if he was "apprehensive of being struck at that point," the victim responded, "If I did not step away from the vehicle, I would have been run over, sure."

Meanwhile, a backup officer had arrived, and he and the victim pursued Young, whose vehicle was moving rapidly. The backup officer testified that when he arrived at the scene, the victim "was moving out of the way of the vehicle." A short time later Young wrecked the car and again began to flee on foot. He was eventually captured and arrested.

Young argues that the evidence does not show that he intended to commit the offense of aggravated assault. We do not agree.

> Under OCGA § 16-5-21 (a) (2), a person commits the offense of aggravated assault when [he] assaults another with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. Although an automobile is not a deadly weapon per se, it may become one depending upon the manner in which it is used. The question of whether an automobile has been used in such a manner so that it constitutes a deadly or offensive weapon is a matter for the factfinder's determination.

(Citations, punctuation and footnotes omitted.) *Frayall v. State*, 259 Ga. App. 286, 287 (1) (576 SE2d 654) (2003). Of course, the intent to injure necessary to support an aggravated assault conviction "cannot be satisfied by a showing of criminal negligence on the part of the appellant. [Cits.]" *Montford v. State*, 254 Ga. App. 524, 525 (1) (564 SE2d 216) (2002). "In other words, no matter the degree, a wanton or reckless state of mind cannot be considered the equivalent of the specific intent to injure necessary to sustain this type of aggravated assault." Id. Here, the evidence showed that Young was not simply acting in a wanton or reckless manner. The victim testified that if he had not moved out of the way, he would have been struck. Given this fact, along with Young's hostility and flight during the entire encounter with the victim, a rational trier of fact was authorized to conclude that Young intended to harm the victim. The evidence authorized the verdict.

2. Young argues that he did not knowingly and intelligently waive his right to a jury trial. It is well established that

> [a] criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citations and punctuation omitted.) *White v. State*, 197 Ga. App. 162 (398 SE2d 35) (1990).

Before the bench trial took place, Young had planned to enter a guilty plea. Indeed, a plea hearing transcript is encompassed in the trial transcript. During the course of the plea hearing, in its colloquy with Young, the court informed Young of the rights he would waive by pleading guilty, telling him that if he had a jury trial, all 12 jurors had "to agree either for guilt or innocence. You can't be convicted if it's not unanimous. And if all 12 of them agreed that you were not guilty, then you would be acquitted." The court also informed Young:

> You previously indicated that you would waive a jury trial and try the case before the judge but you can even change your mind on that if you want to. We can't try your case before a jury today because we don't have any jurors present here. But if you wanted a bench trial, we are prepared to go ahead and try it before me. Do you understand that you still

have that right? To go to a trial if you want to, either by a jury or by the judge, just by changing your plea to not guilty? Do you understand this?

Young responded in the affirmative and a short time later stated that he wanted a bench trial. He stated to the court, "I just want you to hear my testimony." Before trial began, the trial court specifically recited, "I want to make it clear for the record with Mr. Young that he knows that he has the right to be tried by a jury if he wants one. Do you understand that?" Young replied, "Yes, sir, I understand that." The court then stated, "You specified a bench trial. Is that your own decision?" Again, Young responded affirmatively, replying, "That's my decision, sir."

During the hearing on Young's motion for new trial, his trial counsel testified that Young himself brought up the prospect of obtaining a bench trial, indicating to counsel "that he had heard some of the people in the jail say that [the judge to whom the case was assigned] had treated them very well in a bench trial and he wanted to know if he could have one." Counsel stated that he believed the judge "would treat him fairly. So he asked me if he could get a bench trial, and that's the reason we had one." Counsel did not remember if he discussed "the pros and cons of having a bench trial as opposed to a jury trial" with Young, although he told Young that the judge would "be fair and impartial if he had a bench trial." He did not recall explaining any specific risks associated with having a bench trial.

Young testified that he always planned to have a jury trial but that he changed his mind when he learned that one of his witnesses had been "badgered" by the prosecutor and was "hostile" toward him. He stated that trial counsel advised him that it was not a "good idea" to have a jury trial when this witness was hostile, since he was Young's only witness.[1] Young testified as well that he understood what the trial court was asking when the court asked if he agreed to a bench trial.

Although Young's counsel may not have explicitly explained to him the benefits and risks associated with a bench trial, evidence was presented that Young was told that he would be treated fairly if he was tried in a nonjury proceeding. Young's testimony contradicted that of his trial counsel in several respects, but his testimony indicated that trial counsel used sound legal strategy in recommending a bench trial in the face of hostile witness testimony. During the plea hearing, the trial judge explained to Young that a conviction would

---

[1] We note that this witness's testimony actually benefitted Young, as he testified that the victim was not "all in front of the car" when Young began driving.

require a unanimous vote by all 12 jurors, and on the record before the trial, the court expressly asked Young if he wished to have a bench trial. On each occasion, he responded affirmatively.

Unlike the defendant in *McCormick v. State*, 222 Ga. App. 753 (476 SE2d 271) (1996), who was never made aware of his right to a jury trial, Young was made aware of this right by the trial court. The court asked Young "on the record whether he wished to waive his right to a jury trial and proceed with a bench trial." *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002). Only after receiving Young's "oral assurance" that he wished to waive his right to a trial by jury and proceed with a bench trial did the court accept Young's waiver. Id. Under the circumstances of this case, we conclude that Young "personally, knowingly, voluntarily, and intelligently waived his right to a trial by jury." Id. Young himself elected to have a bench trial, he was aware of his right to a jury trial, and he "personally made a knowing and intelligent waiver of" this right. *Pahnke v. State*, 203 Ga. App. 88, 90 (416 SE2d 324) (1992). We find no basis for reversal.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MAY 3, 2005.

*James D. Lamb*, for appellant.

*J. Gray Conger, District Attorney, Robert H. Sandwich, Jr., Assistant District Attorney*, for appellee.