**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2016**

# In the Court of Appeals of Georgia

A15A1856. THE STATE v. HARLACHER.

DILLARD, Judge.

Following a physical altercation at a local sports bar, the State charged Shawn Harlacher, via indictment, with one count of criminal attempt to commit aggravated assault with a deadly weapon. Harlacher filed a motion for a general demurrer, arguing that it is impossible to attempt to commit an aggravated assault, and thus, the indictment failed to allege any criminal offense under the laws of the State of Georgia. The trial court granted Harlacher's demurrer, and the State now appeals. For the reasons set forth *infra*, we affirm.

The record, as alleged by the State, shows that on August 24, 2014, Harlacher and the victim were patronizing a local sports pub when they became involved in a verbal altercation, which then escalated into a physical fight. By all accounts, during

the fight, the victim broke Harlacher's nose, and when the fight was over, the victim turned to go back into the pub. As the victim walked away, Harlacher drew a handgun and pointed it at the victim's head but did not fire. The victim never saw Harlacher's gun, continued walking away, and the incident ended without any further violence.

Subsequently, the State charged Harlacher, via indictment, with one count of criminal attempt to commit aggravated assault with a deadly weapon. Specifically, the indictment alleged that Harlacher

> did knowingly and intentionally attempt to commit the crime of Aggravated Assault with a Deadly Weapon, in violation of Code Section 16-5-21 . . . in that the said accused did attempt to place [the victim] in reasonable apprehension of immediately receiving a violent injury with a pistol, a deadly weapon and an object which when used offensively against a person is likely to result in serious bodily injury, by pointing said pistol at said [victim], an act which constitutes a substantial step toward the commission of said crime . . . .

On March 11, 2015, Harlacher filed a motion for a demurrer, arguing that assault is an attempt to commit battery and because "a person cannot be convicted of attempting to commit a crime that is itself an attempt to commit a crime," the indictment failed to charge an offense under Georgia law. A few weeks later, the trial court held a hearing on Harlacher's motion, and at the conclusion of the hearing, it

2

granted the demurrer and dismissed the indictment, ruling that Harlacher could not be convicted of attempting to commit aggravated assault because (1) assault is itself an attempt to commit a crime, and (2) the victim was unaware of the attempt. This appeal by the State follows.[1]

At the outset, we note that an accused may challenge the sufficiency of an indictment by filing a general or special demurrer.[2] A general demurrer, as the trial court granted here, "challenges the sufficiency of the *substance* of the indictment, whereas a special demurrer challenges the sufficiency of the *form* of the indictment."[3] But an indictment shall be deemed sufficiently technical and correct to withstand a general demurrer if "it states the offense in the terms and language of this Code or so

---

[1] *See* OCGA § 5-7-1 (a) (1) ("An appeal may be taken by and on behalf of the State of Georgia from the superior courts, state courts . . . and such other courts from which a direct appeal is authorized to the Court of Appeals and the Supreme Court in criminal cases . . . [f]rom an order, decision, or judgment setting aside or dismissing any indictment, accusation . . . or any count thereof . . . .").

[2] *See State v. Corhen*, 306 Ga. App. 495, 496 (700 SE2d 912) (2010).

[3] *Id.* (punctuation omitted); *see also Dunbar v. State*, 209 Ga. App. 97, 98 (2) (432 SE2d 829) (1993).

plainly that the nature of the offense charged may easily be understood by the jury."[4]

More fully explained,

> if an accused would be guilty of the crime charged if the facts as alleged in the indictment are taken as true, then the indictment is sufficient to withstand a general demurrer; however, if an accused can admit to all of the facts charged in the indictment and still be innocent of a crime, the indictment is insufficient and is subject to a general demurrer.[5]

Furthermore, this Court reviews a trial court's ruling on a general or special demurrer *de novo* in order to determine "whether the allegations in the indictment are legally sufficient."[6] It is with these guiding principles in mind that we now address the State's claim of error.

The State contends that the trial court erred in granting Harlacher's motion for a general demurrer. Specifically, the State argues that although, under OCGA § 16-5-20 (a) (1), simple assault—which is an essential element of an aggravated assault under OCGA § 16-5-21 (b)—is an attempted battery, simple assault under OCGA §

---

[4] OCGA § 17-7-54 (a); *see also Corhen*, 306 Ga. App. at 497.

[5] *Corhen*, 306 Ga. App. at 497; *see also Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003); *Dunbar*, 209 Ga. App. at 98 (2).

[6] *Sallee v. State*, 329 Ga. App. 612, 616 (2) (765 SE2d 758) (2014); *see also Corhen*, 306 Ga. App. at 497.

4

16-5-20 (a) (2) is not an inchoate offense and, therefore, a defendant can be convicted of attempting to commit such an offense. We are constrained to disagree.

Our analysis, of course, begins with an examination of the relevant statutes, and thus, we note that the fundamental rules of statutory construction require us to "construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage."[7] Put another way, when we consider the meaning of a statute, we must "(1) presume that the General Assembly meant what it said and said what it meant, and (2) read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would."[8] As our Supreme Court has explained,

---

[7] *Algren v. State*, 330 Ga. App. 1, 6 (3) (764 SE2d 611) (2014) (punctuation omitted); *see also Martinez v. State,* 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) ("[A]s with any question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to 'presume that the General Assembly meant what it said and said what it meant.' And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text 'in its most natural and reasonable way, as an ordinary speaker of the English language would.' In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, 'courts must construe the statute accordingly.' ") (citations and punctuation omitted).

[8] *Algren*, 330 Ga. App. at 6-7 (3) (footnote and punctuation omitted); *see also Fed. Dep. Ins. Corp. v. Loudermilk,* 295 Ga. 579, 588 (2) (761 SE2d 332) (2014); *Deal v. Coleman,* 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[i]n our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is the primary determinant of meaning. For context, we may look to the other provision of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.[9]

This is what we mean when we speak of discerning "the intent of the legislature,"[10] as that "intent" is reflected in the relevant statutory text and its contextual backdrop.[11]

Turning to the statutory provisions at issue, the State charged Harlacher with criminal attempt to commit aggravated assault by alleging that he attempted to place the victim in apprehension of receiving a violent injury with a pistol. Under former OCGA § 16-5-21 (b) (2), "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does

---

[9] *Loudermilk,* 295 Ga. at 588 (2) (punctuation omitted); *see also May v. State,* 295 Ga. 388, 391-392 (761 SE2d 38) (2014); *Martinez,* 325 Ga. App. at 273 (2).

[10] *State v. Mussman,* 289 Ga. 586, 588 (1) (713 SE2d 822) (2011) (punctuation omitted).

[11] *See Loudermilk,* 295 Ga. at 588 (2); *May,* 295 Ga. at 391-92; *Algren*, 330 Ga. App. at 7 (3); *Martinez,* 325 Ga. App. at 273.

6

result in serious bodily injury . . . ."[12] And under OCGA § 16-4-1, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."

With regard to assault, OCGA § 16-5-20 (a) (1) provides that "[a] person commits the offense of simple assault when he or she . . . [a]ttempts to commit a violent injury to the person of another . . . ." Thus, under the plain language of this statutory provision, simple assault is, in essence, an attempted battery with the focus on the intention of the perpetrator to injure the victim.[13] And as Harlacher argues and the State concedes, "[w]e know of no law authorizing the conviction for an attempt to commit a crime which itself is a particular type of attempt to commit a crime."[14]

In stark contrast, OCGA § 16-5-20 (a) (2) provides that "[a] person commits the offense of simple assault when he or she . . . [c]ommits an act which places

---

[12] *See* former OCGA § 16-5-21 (b) (2) (2014). In 2015, subsection (m) was slightly modified, but that modification bears no relevance to this appeal. *See* Ga. L. 2015, p. 422, § 5-19.

[13] *See Maynor v. State*, 257 Ga. App. 151, 154 (570 SE2d 428) (2002) (noting that simple assault is an attempted battery under OCGA § 16-5-20 (a) (1) that focuses on the intention of the perpetrator to injure the victim).

[14] *Porter v. State*, 124 Ga. App. 285, 286 (183 SE2d 631) (1971).

7

another in reasonable apprehension of immediately receiving a violent injury . . . ."

Accordingly, the focus of a reasonable apprehension of harm type of simple assault, under OCGA § 16-5-20 (a) (2), is "on the apprehension of the *victim*."[15]

Given these differences in the elements of the respective offenses, and more specifically the fact that unlike OCGA § 16-5-20 (a) (1), the plain meaning of OCGA § 16-5-20 (a) (2) does not include "attempt" as an element of the offense, it would indeed seem feasible to convict an accused of attempting a reasonable-apprehension-of-harm type of assault.[16] However, as the State concedes, the fact that the victim was unaware that Harlacher aimed a handgun at him precludes a conviction of a *completed* aggravated assault under OCGA §§ 16-5-21 (b) (2) and 16-5-20 (a) (2).[17]

---

[15] *Maynor*, 257 Ga. App. at 154.

[16] *See State v. Godsey*, 127 P3d 11, 15 (B) (Wash. App. 2006) (holding that "[b]ecause the 'apprehension' type of assault lacks an attempt element, it is feasible to convict someone of attempting an assault by such means"); *Lamb v. State*, 613 A2d 402, 419-20 (Md. App. 1992) (noting that there may not be an attempted assault of the attempted-battery variety because that type of assault is already inchoate and there may not be an attempted attempt, but when the assault "is of the intent-to-frighten variety, there is no reason whatsoever why there cannot be an attempt to commit it").

[17] *See Perez v. State*, 281 Ga. 175, 177 (2) (637 SE2d 30 (2006) (holding that the evidence was insufficient to find defendant guilty of aggravated assault because there was no evidence that the unconscious victim was in apprehension of being injured); *Montford v. State*, 254 Ga. App. 524, 527 (1) (b) (564 SE2d 216) (2002) (holding that because there was no evidence that police officer saw defendant's car

8

And although we find persuasive the State's logic (as dictated by the plain meaning of the relevant text) that a victim's lack of awareness of a reasonable-apprehension-of-harm type of assault should not preclude a conviction of an *attempt* to do so when, as here, Harlacher took substantial steps toward committing such a crime,[18] we are nonetheless constrained by precedent that seemingly dictates otherwise.[19] Indeed, the Supreme Court of Georgia has previously explained that if a "victim is not placed in reasonable apprehension of immediate violent injury by the pointing of [a] firearm, *only* the misdemeanor of pointing a firearm . . . has been committed."[20] Thus,

---

approaching, the evidence was insufficient to establish that officer was in reasonable apprehension of immediately receiving a violent injury when defendant collided with officer's vehicle so as to prove requisite apprehension element of aggravated assault).

[18] *See* OCGA § 16-4-1; *see generally Anthony v. State*, 276 Ga. App. 107, 108 (1) (622 SE2d 450) (2005) (noting that "the presence of a gun would normally place a victim in reasonable apprehension of being injured violently" (punctuation omitted)).

[19] *See* GA. CONST. art. VI, § VI, ¶ VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith*, 308 Ga. App. 345, 352 (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.").

[20] *Rhodes v. State*, 257 Ga. 368, 370 (5) (359 SE2d 670) (1987) (emphasis added); *see also Manzano v. State*, 282 Ga. 557, 558-559 (2) (651 SE2d 661) (2007) (same); OCGA § 16-11-102 ("A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded.").

regardless of the merits of the State's position, our Supreme Court—by implication at the very least—appears to have foreclosed the argument that the victim's lack of a reasonable apprehension of immediately receiving a violent injury can nevertheless result in a conviction for attempted aggravated assault.[21] Accordingly, until such time as the Supreme Court of Georgia clarifies the extent of its holding in *Rhodes*, we are obliged to rule that the trial court did not err in granting Harlacher's general demurrer.

*Judgment affirmed. Ellington, P. J., concurs. McFadden, J., concurs specially.*

---

[21] *See supra* note 20.

A15A1856. THE STATE v. HARLACHER.

MCFADDEN, Judge, concurring specially.

I concur in the judgment and in all of its analysis – except the text supported by footnotes 10 and 11. That text, which I take to be incidental to the majority's analysis, undertakes to explain "what we mean when we speak of discerning 'the intent of the legislature.'"

"In all interpretations of statutes," we are charged to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). The majority does not cite § 1-3-1 (a), but as I understand the text supported by those footnotes, it purports to authoritatively construe and confine the principle set out in that statute.

But that principle was in our first official Code, was part of our law long before that, and can be traced back to Blackstone's Commentaries on the Laws of England. See *Everett v. Planters' Bank*, 61 Ga. 38, 41 (1878); *Forman v. Troup*, 30 Ga. 496, 498 (1860); *Booth v. Williams*, 2 Ga. 252, 254 (1847); see also *Persons v. Hight*, 4 Ga. 474, 501 (1848) (Warner, J., dissenting).

No doubt much of what has been written over the centuries in the hundreds of Georgia appellate decisions citing that principle can fairly be reconciled with what the majority writes today. But I am not prepared to declare that all of it can. Nor am I prepared to broadly disapprove of any and all of those opinions that cannot be so reconciled – especially as many of them are opinions of our Supreme Court.