## S11A1775. DUKES v. THE STATE.

(722 SE2d 701)

MELTON, Justice.

Following his conviction for the malice murder, felony murder, and aggravated assault of Demetric Johnson, Brian Dukes appeals, contending that the trial court erred by admitting certain evidence and by giving an improper jury instruction.[1] For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on the night of September 8, 2006, Dukes watched movies with Charles Gordon, Constance Jamison, and Johnson at Gordon's apartment. At one point, Gordon, who was sitting in the living room with Jamison, told Dukes to go in the kitchen and help himself to some food. Gordon noticed that Dukes was wearing a black glove with a blade sticking out between his fingers as he went into the kitchen, where Johnson was at the moment. Shortly thereafter, Dukes and Johnson began fighting in the kitchen. The fight then led them into the living room, where Dukes was hitting and stabbing Johnson. Gordon witnessed the altercation as it happened in the living room. Frightened by the fight, Gordon and Jamison ran out of the apartment. Dukes then left, and Johnson was discovered with 43 stab wounds, from which he died.

At about 3:00 a.m. that night, Dukes showed up at his mother's house wearing only jockey shorts, socks and slippers. Dukes told her that he ran there from the home he shared with his brother, Oliver, because his girlfriend had challenged him to do it. Dukes also told his mother that he was thinking of re-enlisting in the Army because he might as well get paid for killing instead of doing it for free. The next morning police arrested Dukes at his mother's house.

In October 2006, Dukes told a cellmate, Rintu Cunningham, that he killed Johnson with a knife at the apartment of a guy named Charles. Dukes further explained to Cunningham that, after the murder, he fled to his mother's house through the woods and discarded the knife and glove along the way. Dukes stated that he also threw away all of his bloody clothing and showed up at his mother's house in just boxers.

---

[1] On December 4, 2006, Dukes was indicted for malice murder, felony murder, and aggravated assault. Following a jury trial, Dukes was convicted on all counts, and he was sentenced to life imprisonment for malice murder. The conviction for felony murder was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining conviction for aggravated assault was merged. On April 7, 2009, Dukes filed a motion for new trial, amended on January 7, 2011 and January 20, 2011, and the trial court denied the motion on April 6, 2011. Following the filing of a timely notice of appeal, Dukes' case was docketed to the September 2011 term of this Court and submitted for decision on the briefs.

This evidence was sufficient to enable the jury to determine that Dukes was guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Dukes contends that the trial court erred by improperly defining "malice aforethought" in response to a request from the jury for a recharge on this concept during deliberations. We disagree.

It is undisputed that, in its initial charge to the jury, the trial court gave a correct and detailed charge on malice murder to the jury. Nonetheless, during deliberations, the jury requested a recharge on the concept of "malice aforethought." After lengthy discussion, the trial court instructed:

> Malice aforethought exists where the person doing the act which causes death has an intention to cause death. Premeditation, as the term is usually used, means a prior determination or plan to commit an act. Premeditation is not an element of the offense of murder and therefore need not be proven by the State to establish malice aforethought. However, any evidence of premeditation, or lack of it, may be considered by you insofar as it relates to the existence, or nonexistence, of malice at the time of the alleged killing.

Dukes now argues that this instruction confused the jury by giving undue emphasis to the concept of premeditation. There is no merit to this argument. As an initial matter, the trial court's instruction was based on the pattern charge and was legally correct. See OCGA § 16-5-1 (a), (b); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 2.10.10, 2.10.11 (4th ed.). Moreover, a trial court has discretion "to give or not to give unrequested additional instructions when the jury requests a recharge on a particular point, [cit.], and the discretion includes the giving of unrequested instructions not contained in the trial court's original charge. [Cit.]" *Miner v. State*, 268 Ga. 67, 67 (2) (485 SE2d 456) (1997). Finally, looking at the charge as a whole and given the undisputedly correct and detailed instructions contained in the trial court's original charge to the jury, it is unlikely that the jury was confused by the recharge which clearly indicated that premeditation was not an element of the crime. There was no error.

3. Dukes contends that the trial court erred by allowing Cunningham to testify that Dukes asked him to frighten Gordon out of testifying and that Dukes threatened to harm Cunningham after he learned that he was a snitch. Dukes maintains that this testimony violated a granted motion in limine, in which the trial court excluded evidence of prior murders or other bad acts unrelated to the crime

for which Dukes was being tried. The trial transcript, however, does not fully reflect the extent of the motion in limine. The testimony of Dukes' trial counsel at the hearing on the motion for new trial indicates, however, that she did not think that the evidence about which Dukes complained was covered by the motion in limine, as it is legally admissible evidence. The law supports Dukes' trial counsel's supposition.

> We recognize in Georgia that evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt. *Nguyen v. State*, 273 Ga. 389 (3) (543 SE2d 5) (2001); *Ballard v. State*, 268 Ga. 895, n. 4 (494 SE2d 644) (1998). Even where the defendant does not personally make the attempt to influence or intimidate a witness, "[i]t is a settled principle of law . . . that an attempt by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt where it is established that the attempt was made with the authorization of the accused." Annotation, "Admissibility in Criminal Case, on Issue of Defendant's Guilt, of Evidence that Third Person Has Attempted to Influence a Witness Not to Testify or to Testify Falsely," 79 ALR3d 1156, 1162, § 3 [a] (1977). See also *Johnson v. State*, 255 Ga. App. 721, 722 (2) (566 SE2d 440) (2002) (State can show defendant's attempts to influence witnesses made through intermediaries but evidence regarding third party's attempts "must be linked to the defendant in order to be relevant to any material issues").

*Kell v. State*, 280 Ga. 669, 671-672 (2) (a) (631 SE2d 679) (2006). There was no error.

4. Dukes contends that the trial court erred by admitting, as res gestae evidence, his mother's testimony that Dukes told her approximately two hours after the murder that he should re-enlist in the Army rather than killing people for free. However, pretermitting the question whether Dukes' statement was admissible as res gestae evidence, it is clear that his statement was readily admissible as an admission by a party. See OCGA § 24-3-31; *Austin v. State*, 286 Ga. App. 149, 155 (4) (648 SE2d 414) (2007) ("[V]oluntary, noncustodial, incriminating statements of defendants are admissible through the testimony of anyone who heard them"). He has therefore provided no basis for reversal of his conviction here.

5. Finally, Dukes maintains that, in response to a question during deliberations, the trial court erred by instructing the jury:

"Yes, the jury must reach a unanimous verdict on all charges. The verdict must be freely and voluntarily agreed upon by all twelve jurors."[2] Given the jury charges as a whole, we disagree with the assertion that any error, let alone plain error, occurred here. See *Hilton v. State*, 233 Ga. 11 (2) (209 SE2d 606) (1974) ("Before a charge will constitute reversible error, the charge in question must be viewed in regard to the charge as a whole.").

While a court should not instruct a jury that it is absolutely required to reach a verdict, it is permissible to instruct a jury that any verdict that it does agree on must be unanimous. See, e.g., *Parks v. State*, 254 Ga. 403 (14) (330 SE2d 686) (1985); *Legare v. State*, 250 Ga. 875 (1) (302 SE2d 351) (1983), overruled on other grounds, *Humphries v. State*, 287 Ga. 63 (694 SE2d 316) (2010). With this in mind, the first sentence of the trial court's recharge is questionable. In the second sentence, however, the trial court states that the verdict must be *voluntary*. In addition, in its initial charge, the trial court instructed the jury: "Whatever your verdict is in this case, it must be unanimous, and that means that all 12 of you will have to freely and voluntarily agree to any decision you make in this case." The trial court also stated: "[T]he law does not require that you should ever surrender an honest opinion based on the evidence and my instructions just to be congenial or well-liked by everybody or to reach a verdict solely because of the opinions of what everyone else on the panel thinks." Therefore, viewing the charges as a whole, it appears that the jury was adequately and properly instructed that any voluntary verdict that they reached had to be unanimous.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 6, 2012.

*Dell Jackson*, for appellant.

*Robert D. James, Jr.*, District Attorney, *Daniel J. Quinn*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Katherine R. Thrower*, Assistant Attorney General, for appellee.

---

[2] We note that Dukes failed to object to the trial court's instruction, which makes his claim on appeal subject only to plain error review under OCGA § 17-8-58. See OCGA § 17-8-58 (b) (Failure to properly object to any portion of a jury charge "shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties").