In the Supreme Court of Georgia

Decided:   October 5, 2015

S15A0832.  DRAYTON v. THE STATE.

NAHMIAS, Justice.

Appellant Phillip Drayton was found guilty at trial of malice murder and

other crimes in connection with the shooting death of Steve Fowler.  On appeal,

his only contention is that the trial court erred when, during jury deliberations,

the court gave a so-called "Allen charge" including the sentence, "It is the law

that a unanimous verdict is required" – part of the pattern instruction used in

Georgia when a jury reports that it is "hung."  Finding no such error, we affirm.[1]

[1] The shooting occurred on October 9, 2005.  On January 9, 2006, a Ben Hill County grand jury indicted Appellant for malice murder, felony murder, two counts of aggravated assault with a deadly weapon (against Fowler and Teuqesta Crumedy), two counts of possession of a firearm during the commission of a felony, and carrying a firearm "to a public gathering, to wit:  Roanoke Homes, a publicly owned and operated housing project."  (At the time of the shooting, OCGA § 16-11-127 made it a misdemeanor, subject to exceptions not relevant here, to "carr[y] to or while at a public gathering any . . . firearm" and defined "public gathering" to include "publicly owned or operated buildings.")  Trial began on September 26, 2006, and the next day the jury acquitted Appellant of the aggravated assault against Crumedy and the associated firearm count, but found him guilty of the other five charges.  The trial court sentenced Appellant to serve life in prison for malice murder, a consecutive five-year term for possession of a firearm during the commission of a felony, and a concurrent one-year term for carrying a firearm to a public gathering.  The felony murder verdict was vacated by operation of law, and the remaining aggravated assault count merged.

On October 4, 2006, Appellant filed a motion for new trial, which he amended on May 20, 2008.  On October 16, 2008, Appellant's first appointed appellate counsel filed an entry of

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. The shooting occurred on the afternoon of October 9, 2005, at Roanoke Homes, a public housing project in Fitzgerald, Georgia, where 19-year-old Steve Fowler lived with Karen Gilbert. Appellant, who was 55 years old, had lent Fowler $15 to get hair extensions two weeks earlier and was angry that Fowler had not repaid him. Appellant was friends with Gilbert and told her two days before the shooting that he was "going to shoot" Fowler because Fowler owed him money. On the day before the shooting, Appellant told another friend, LaTosha Young, that he was "tired of the s\*\*t" and was going to "kill one of them MFs," and when Young asked what he was talking about, Appellant said that he was going to "kill Stevie" for not repaying him.

appearance. The trial court held a hearing on April 29, 2009, and denied the new trial motion on June 23, 2009. Appellant filed a timely notice of appeal, and the record was transmitted to this Court, where the appeal was docketed on January 25, 2011. Appellant did not then file a brief, however, and on February 22, 2011, this Court ordered him to file a brief by March 4 or face sanctions under this Court's Rule 10, which says, "Failure to comply with an order of the Court directing the filing of a brief may cause the appeal to be dismissed . . . ." Appellant still did not file a brief, and on March 30, 2011, we dismissed his appeal. Different appointed lawyers then filed entries of appearance for Appellant in the trial court on May 27 and July 18, 2011, and on May 9, 2013, but none of these lawyers made any substantive filings. On May 27, 2014, Appellant's fifth (and current) appointed appellate counsel filed a substitution of counsel, and on October 28, 2014, Appellant filed a motion for out-of-time appeal. On December 9, 2014, the trial court held a hearing and, without objection by the State, entered an order granting Appellant an out-of-time appeal based on his first appellate counsel's failure to file a brief in the 2011 appeal. Appellant again filed a timely notice of appeal, and the case was docketed in this Court for the April 2015 term and submitted for decision on the briefs; this time Appellant filed a timely brief.

2

On the day of the shooting, Appellant was driving around Roanoke Homes when he spotted Fowler sitting in a chair behind one of the units with Teuqesta Crumedy, Fowler's girlfriend, sitting in his lap. Derrick Brown was standing about 20 yards away talking to Sheena Jenkins. Appellant parked his car, got out, and tucked his loaded .380 caliber pistol, with the safety off, into his waistband under his shirt. Appellant walked directly up to Fowler, saying as he approached, "I thought you said you was going to pay my money." Fowler, who was unarmed, replied in a "regular" tone of voice, "I thought you said you was going to shoot me." Appellant then slapped Fowler across the face, Crumedy moved out of the way, and Fowler started to stand up. Appellant drew his gun, pointed it at Fowler's head, and pulled the trigger, shooting Fowler fatally in the face. Fowler fell straight backwards onto the ground, with blood gushing from his face, and Appellant said, "Yeah, motherf****r." A crowd started to gather, and Appellant began walking towards his car. The first police officer on the scene ordered him to halt and drop his gun. Appellant did not comply until he had reached his car and additional officers were arriving, at which point he dropped the gun behind the car. After Appellant was arrested, he told a detective in an interview that he had approached Fowler and asked when Fowler

3

was going to repay him, and when Fowler "said something smart," Appellant pointed his gun at Fowler and "took him out."

At trial, Gilbert and Young testified about Appellant's threats to shoot and kill Fowler in the days leading up to the shooting, and Crumedy, Brown, and Jenkins identified Appellant as the shooter and testified that he was the aggressor, not Fowler. Appellant also testified at trial. He admitted pointing his gun at Fowler's head and pulling the trigger but claimed that he was backing away from Fowler at the time and acted in self-defense when Fowler came at him while "balling his fists up" as if to hit Appellant. Appellant denied ever threatening to shoot or kill Fowler and said that he did not intend to kill Fowler when he shot him in the face.

Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega

4

v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.     Appellant's sole contention is that the trial court coerced the verdicts by giving the jury a supplemental instruction during deliberations that included the sentence, "It is the law that a unanimous verdict is required." Pretermitting whether Appellant properly preserved this issue for appellate review, we hold that the claim is meritless.

(a)     The trial lasted two days. On the second day, after closing arguments and lunch, the trial court charged the jury. Near the end of the charge, the court instructed:

> Whatever your verdict is, it must be unanimous; that is, agreed to by all 12 of you. . . . One of your first duties in the jury room will be to select one of your number to act as foreperson, who will preside over the deliberations and who will sign the verdict to which all 12 of you freely and voluntarily agree. You should start your deliberations with an open mind. Consult with one another and consider each other's view. Each of you decide this case for yourself, but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if convinced that it is wrong; however, you should never surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of the other jurors.

5

At 2:15 p.m., the court directed the jury to begin deliberations. At 4:05 p.m., the jury sent out two notes, and five minutes later, the court sent the bailiff back to the jury room with the notes and the court's written responses.[2] At 5:30 p.m., the jury sent out another note, which said: "Your Honor, we have gotten [Counts] 2-7 in total agreement. We are 11-1 on Count 1 [malice murder], and no one will move. What do we do?" After discussing the note with the parties, the court had the bailiff bring the jury back into the courtroom and read Georgia's pattern jury instruction encouraging further deliberations – a modified Allen charge. See Allen v. United States, 164 U.S. 492, 501 (17 SCt 154, 41 LE 528) (1896). See also Romine v. State, 256 Ga. 521, 526 (350 SE2d 446) (1986) (noting that it is "'somewhat imprecise to refer to a single Allen charge,'" as more than a century of judicial interpretation has "'produced a variety of permutations and amplifications of the original wording'" (citation omitted)). At 5:42 p.m., the court sent the jury back to continue deliberating. About a half-hour later, at 6:15 p.m., the jury returned to the courtroom and

_____

[2] The notes said, "Can we have Teuqesta Crumedy's testimony?," and "Three of us need to smoke." With the parties' assent, the court wrote on the notes, "You will have to recall the testimony from the trial of the case," and "You can smoke, but deliberations must be suspended by all jurors until you return to the jury room." The court directed the bailiff to give the notes to the jury and to take the three jurors who wanted to smoke outside for a smoke break.

6

presented unanimous verdicts on all seven counts, finding Appellant guilty of malice murder and four other charges and acquitting him on two charges. See footnote 1 above. At Appellant's request, the court polled the jurors individually, and each juror affirmed the verdicts.

The trial court's charge to the jury was as follows, with the specific portion challenged by Appellant emphasized:

> You have now been deliberating upon the case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible. The case has been exhaustively and carefully tried by both sides and has been submitted to you for a decision and verdict, if possible, and not for disagreement. *It is the law that a unanimous verdict is required.* While this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is, nevertheless, necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for and deference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them. If the members of the jury differ in their view of the evidence, the difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of their opinion. Your duty is to decide the issues that have been submitted to you, and if you can conscientiously do so, in conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for taking up and maintaining in a spirit of controversy either side of a cause. You should bear in mind at all times that as jurors you should not be

7

advocates for either side. You should keep in mind the truth as it appears from the evidence, examined in the light of the instructions of the Court. You may again retire to your room for a reasonable time and examine your differences in a spirit of fairness and candor and to try to arrive at a verdict.

With a few insubstantial exceptions, this tracked Georgia's pattern modified Allen charge in use both at the time of Appellant's trial and now. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases 1.70.70 Jury (Hung) (updated July 2014).

(b)    Due process of law entitles a criminal defendant being tried by a jury "to the uncoerced verdict of that body." Lowenfield v. Phelps, 484 U.S. 231, 241 (108 SCt 546, 98 LE2d 568) (1988). Where a defendant claims that a supplemental instruction coerced the jury's verdict,

we look to the totality of the circumstances, and we consider whether the charge was "coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors."

Porras v. State, 295 Ga. 412, 419 (761 SE2d 6) (2014) (citation omitted). See also Lowenfield, 484 U.S. at 237 (explaining that appellate review of a claim of jury coercion requires the court to "consider the supplemental charge given by

8

the trial court 'in its context and under all the circumstances'" (citation omitted)).

Appellant does not enumerate as error the trial court's decision to give an Allen charge after the jury reported its deadlock on Count 1. See Mayfield v. State, 276 Ga. 324, 330 (578 SE2d 438) (2003) ("The decision of whether to give an Allen charge is within the discretion of the trial court."). He contends only that the court's instruction that "[i]t is the law that a unanimous verdict is required" misled the jurors into thinking that they had no choice but to agree on a verdict of guilty or not guilty on each count of the indictment, effectively foreclosing a possible "no verdict" outcome, at which point a mistrial would be declared on any undecided counts. Wrested from its context, the challenged sentence might bear the meaning that Appellant ascribes to it. But the sentence also expresses the accurate proposition of law that a verdict is required to be unanimous. See Humphreys v. State, 287 Ga. 63, 82 (694 SE2d 316) (2010) (explaining that "the 'a unanimous verdict is required' instruction is technically a correct statement of the law even in the context of the sentencing phase of a death penalty trial," although the better practice is to omit the language from Allen charges given in that unique setting). Thus, we have explained that

"[w]hile a court should not instruct a jury that it is absolutely required to reach a verdict, it is permissible to instruct a jury that any verdict that it does agree on must be unanimous." Dukes v. State, 290 Ga. 486, 489 (722 SE2d 701) (2012). We have also explained that allegedly coercive jury charges, like other disputed charges, must be considered in the context of the jury instructions as a whole. See id. ("'Before a charge will constitute reversible error, the charge in question must be viewed in regard to the charge as a whole.'" (citation omitted)).

When considered in the context of the full modified Allen charge and even more the jury instructions as a whole, the jury would have understood the challenged sentence to mean only that in order for the jury to return a verdict of guilty or not guilty on any count of the indictment, all 12 jurors had to agree on that disposition, and not that the jurors were absolutely required to reach agreement on each charge as opposed to deadlocking on one or more charges. After all, the supplemental instruction referred right before the disputed sentence to "the desirability of agreement, *if possible*" and told the jury that the case had been submitted to them "for a decision and verdict, *if possible*"; said right after the disputed sentence that "this verdict must be the conclusion of each juror and *not a mere acquiescence of the jurors in order to reach an agreement*"; and

10

concluded by informing the jury that it was being sent back to the jury room to deliberate for only "a reasonable time . . . to *try* to arrive at a verdict." In addition, the court told the jurors before they started deliberating that while a verdict required the agreement of all 12 of them, they all had to "freely and voluntarily agree" to it, "[e]ach of you decide this case for yourself," and "you should never surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of the other jurors." See Dukes, 290 Ga. at 489 (noting similar initial instructions as helping to offset a "questionable" statement that the trial court made in response to a jury question).

Furthermore, the circumstances of the case are not suggestive of coercion. The record shows that after about three hours of deliberations on the second afternoon of a two-day trial, the jury had already reached unanimous agreement on how to dispose of six of the seven counts of the indictment, and on the remaining count the jurors were split 11-1. The court gave the Allen charge, and the jury then deliberated for another half-hour before returning to the courtroom with unanimous verdicts on all seven counts. Notably, the jury convicted Appellant on some counts but acquitted him on others. And at Appellant's request, the court polled the jurors individually, and each juror confirmed the

11

verdicts. In light of the context of the "a unanimous verdict is required" language, and considering the totality of the circumstances surrounding the giving of the modified <u>Allen</u> charge, we conclude that the trial court did not coerce the jury's verdicts. See <u>Humphreys</u>, 287 Ga. at 81-82. See also <u>Mayfield</u>, 276 Ga. at 330-331 (rejecting a generalized coerced verdict claim where the trial court gave an <u>Allen</u> charge that included the "a unanimous verdict is required" language); <u>McKee v. State</u>, 277 Ga. 577, 578 (591 SE2d 814) (2004) (same). This enumeration of error lacks merit.

<u>Judgment affirmed. All the Justices concur.</u>