# IN THE SUPREME COURT OF IOWA

No. 22–0089

Submitted September 14, 2023—Filed October 27, 2023

STATE OF IOWA,

    Appellee,

vs.

JOHNNY BLAHNIK CHURCH a/k/a DREW ALAN BLAHNIK,

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Christopher L. Bruns, Judge.

The defendant challenges the propriety of a verdict-urging instruction.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Leon F. Spies of Spies & Pavelich, Iowa City, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert and Louis S. Sloven, Assistant Attorneys General, for appellee.

**MCDONALD, Justice.**

When a jury in deliberations communicates to a judge that they may be deadlocked, the judge has considerable discretion to give to the jury a supplemental instruction, known as a verdict-urging instruction, to encourage continued deliberations. The judge's decision to give a verdict-urging instruction will be reversed only where the circumstances show the verdict-urging instruction coerced the jury's verdict. The sole question presented in this appeal is whether the district court abused its considerable discretion and coerced the jury's verdict by giving a verdict-urging instruction after being told that the jury was divided 11–1 and that one juror was not following the judge's instructions.

I.

Johnny Blahnik Church, also known as Drew Alan Blahnik, stabbed and killed Christopher Bagley. Bagley suffered at least thirteen different stab wounds, including wounds to his neck, chest, and abdomen. After Church killed Bagley, Church helped bury Bagley's body and then lied to investigators and a grand jury about what had happened.

Church was indicted for murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2(1)(*a*) (2018), obstructing prosecution, in violation of Iowa Code section 709.3(1), and abuse of a corpse, in violation of Iowa Code section 708.14(1)(*b*). The facts and circumstances of Church's offenses are largely immaterial to the resolution of this appeal, and we need not discuss them any further. What is material to the resolution of this appeal are the facts and circumstances related to Church's trial and the jury's deliberations, and we discuss those facts and circumstances at some length.

Church's trial began on Friday, July 16, 2021. At trial, Church asserted a defense of justification. The case was submitted to the jury at approximately 4:06 p.m. on Monday, July 26. The jury met for thirty-five minutes, separating

at 4:41 p.m. that day. The jury resumed deliberations the following day, Tuesday, meeting for nearly three hours total between 9 a.m. and noon. On Wednesday, the jury deliberated for approximately seven hours in total.

The jury reconvened on Thursday, July 29. At approximately 10:06 a.m., the jury sent a note to the district court: "A juror is failing to follow specific rules set forth by you in the rule packet provided. In regards to 45 + 52." Instruction 45 related to Church's justification defense, and instruction 52 related to a person's duties after using deadly force. Based on this note, the court believed the jurors were deadlocked. Nonetheless, after conferring with counsel, the district court responded with a written note to the jury: "As previously instructed, you are required to apply the law set forth in the instructions already provided to you."

Approximately one hour later, the jury informed the court attendant that it was deadlocked. After conferring with the attorneys, the district court instructed the jury to communicate with the court in writing, and the jury sent the following note signed by the foreperson:

> We have a juror that is refusing to follow certain rules set forth by you. We took a vote to whether or not we felt this person was deliberately not following a rule. The vote was 11 to 1. We have gone over this rule numerous times with this juror. The response has been "I don't care, I'm not changing my opinion."

The court made a record with the attorneys after receiving the jury's note. The State requested the district court issue a verdict-urging instruction. Church's counsel objected. The court denied the prosecutor's request to issue a verdict-urging instruction. Instead, the court sent a question to the jury: "Do you believe further deliberations would be fruitful?"

Shortly thereafter, at 11:37 a.m., the jury sent the following response, signed by the foreperson, to the district court's question: "No, we feel that

because the rules set forth by this court are not being followed by a single juror that deliberations would NOT be fruitful." After receiving the jury's response, the district court again met with the lawyers. The prosecutor renewed his request for a verdict-urging instruction, and Church's counsel objected. Church's counsel argued that issuing a verdict-urging instruction under these circumstances would be coercive. After considering the parties' arguments, the district court issued the following written verdict-urging instruction:

> You have been deliberating upon this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.

> The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible. It is the law that a unanimous verdict is required. While this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us informing our own judgment.

> Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their problem. Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so. In conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. The aim ever to be kept in view is the truth as it appears from the evidence, examined in light of the instructions of the Court.

> Please continue your deliberations.

The district court issued the instruction at approximately 12:08 p.m.

Three and one-half hours later, at 3:39 p.m., the jury informed the district court it had reached a verdict. The jury found Church guilty of murder in the

second degree, obstructing prosecution, and abusing a corpse. The district court polled the jurors in open court, asking each one: "Is this your verdict?" Each juror answered in the affirmative without any doubt or hesitation noted in the record.

Church appealed his convictions, and we transferred the case to the court of appeals. The court of appeals concluded the jury's verdict was coerced, vacated Church's convictions, and remanded the case for a new trial. We granted the State's application for further review.

## II.

"Supplemental instructions urging a jury to reach a unanimous verdict have 'long been sanctioned.'" *State v. Piper*, 663 N.W.2d 894, 911 (Iowa 2003) (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988)), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010). The district court "has considerable discretion in determining whether [a] verdict-urging instruction[] should be given." *State v. Campbell*, 294 N.W.2d 803, 808–09 (Iowa 1980). We will reverse a district court's decision to give a verdict-urging instruction only where the verdict-urging instruction coerced or helped coerce the jury's verdict. *See State v. Davis*, 975 N.W.2d 1, 18 (Iowa 2022). In determining whether the instruction coerced or helped coerce the jury's verdict, we generally look at "the content of the verdict-urging instruction," "the timing surrounding the verdict," and the "responses from juror polling to ensure each juror was not coerced into their verdict." *Id.* These considerations are not exclusive, however, and each case must be decided based on the totality of the circumstances. *See id.* "The ultimate test is whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated the disagreement." *Campbell*, 294 N.W.2d at 808.

A.

The disposition of this case is largely controlled by our recent decision in *State v. Davis*, 975 N.W.2d 1. In that case, the defendant was charged with first-degree murder. *Id.* at 7. "After seven hours of jury deliberation, the court attendant informed the court that the jury may be deadlocked." *Id.* at 17. Over the defendant's objection, the district court gave the jury a verdict-urging instruction. *Id.* After the jury was provided with an oral verdict-urging instruction, "they deliberated for approximately four and a half hours before returning with a guilty verdict." *Id.* On appeal, the defendant contended that the verdict-urging instruction coerced the jury's verdict and that he was entitled to a new trial. *Id.* We concluded the defendant failed to establish coercion or potential coercion of the jury's verdict. In analyzing the most relevant factors, we concluded the content of the instruction was not coercive, *id.* at 18, the timing of the jury's verdict did not evidence coercion, *id.* at 20, and the jury poll did not evidence coercion, *id.* at 21.

As in *Davis*, none of the most relevant factors support the conclusion that the district court's verdict-urging instruction coerced or helped coerce the jury's verdict. With respect to the content of the instruction, the instruction in this case contained none of the language our courts have found coercive or potentially coercive. The instruction did "not target jurors in the minority." *Id.* at 18. The instruction "did not identify the number of jurors with a minority opinion." *Id.* The instruction did "not express any requirement that the jury reach a verdict." *Id.* The instruction did "not discuss the possibility of a retrial or the mounting litigation expenses." *Id.*

In addition to not containing coercive or potentially coercive language, the instruction contained appropriate language to prevent potential coercion. The instruction was broad and was directed to "each" and "all" of the jurors rather

than those in the minority. The instruction urged unanimity but also provided that the jury should do so only "if possible" and only if the jurors could "conscientiously do so."

In short, the content of the district court's verdict-urging instruction is materially indistinguishable from that found to be noncoercive in *Davis* and other decisions. *See, e.g.*, *Davis*, 975 N.W.2d at 18–19; *Piper*, 663 N.W.2d at 912; *Campbell*, 294 N.W.2d at 808; *State v. Gibbs*, No. 22–0006, 2023 WL 152568, at *4 (Iowa Ct. App. Jan. 11, 2023); *State v. Parmer*, No. 13–2033, 2015 WL 2393652, at *6 (Iowa Ct. App. May 20, 2015); *State v. Power*, No. 13–0052, 2014 WL 2600214, at *4–5 (Iowa Ct. App. June 11, 2014).[1]

The timing of the verdict does not support the conclusion the jury's verdict in this case was coerced or potentially coerced. When we examine the timing of the jury's verdict, the essence of the inquiry is whether the length of the jury's post-instruction deliberations evidenced the jury engaged in new, real, and worthwhile deliberations that terminated the disagreement. *See Davis*,

---

[1]A verdict-urging instruction is frequently referred to as an "*Allen* charge," originating from the Supreme Court case *Allen v. United States*, 164 U.S. 492, 501–02 (1896), which approved the use of a verdict-urging instruction. The language approved in *Allen* included language that directed jurors in the minority to rethink their position in light of the view of the majority, among other things. *See id.* at 501. Because the language in the instruction in this case does not include some of the language approved in *Allen* but later thought to be problematic, the instruction is not a true "*Allen* charge." *See State v. Lamb*, 261 S.E.2d 130, 131–32 (N.C. 1979) (discussing deficiencies in the instruction approved in *Allen* and subsequent developments in improving a verdict-urging instruction); *Commonwealth v. Greer*, 951 A.2d 346, 355 (Pa. 2008) ("The *Allen* charge came to be commonly used in both the state and federal courts, but over time, various courts raised concerns respecting that part of the charge encouraging jurors in the minority to reconsider their views in light of the majority vote, with the fear being that such an emphasis might be unduly coercive."); *State v. Steven G.B.*, No. 93-1658-CR, 1996 WL 426089, at *5 (Wis. Ct. App. July 31, 1996) (explaining that the modified instruction "is not the instruction used in the case giving rise to the term '*Allen*' charge" but that "attorneys and trial courts continue to refer to the instruction as the *Allen* charge"); 6 Wayne R. LaFave et al., Criminal Procedure § 24.9(d), at 674 (4th ed. 2015) ("But many courts have turned away from the *Allen* charge, some of these approving the use of more guarded language."). We thus refer to the instruction in this case as a verdict-urging instruction.

975 N.W.2d at 19; *Campbell*, 294 N.W.2d at 808. In *Davis*, we concluded that "[f]our and a half hours was ample time for the jurors to engage in meaningful conversation on the evidence presented and thoroughly evaluate each other's opinions." 975 N.W.2d at 20. In *State v. Myers*, we found post-instruction deliberations of forty-one minutes were sufficient to show the jury commenced new, real deliberations that terminated the jury's prior disagreement. 140 N.W.2d 891, 898 (Iowa 1966). In this case, the jury deliberated three and one-half hours after receiving the district court's verdict-urging instruction. This negates any suggestion of coercion. *See State v. Quitt*, 204 N.W.2d 913, 914 (Iowa 1973) ("The record here does not suggest coercion. In fact, it rather demonstratively negatives it. The fact the jury deliberated 3 hours 52 minutes following the giving of the verdict-urging instruction (which elapsed time included time out for the evening meal), indicates the jury gave additional consideration to the record before a verdict was reached."); *Campbell*, 294 N.W.2d at 811 (finding no coercion where jury deliberated two and a half hours post-instruction); *State v. Kelley*, 161 N.W.2d 123, 126 (Iowa 1968) (holding there was "nothing here to suggest coercion" where the jury deliberated for twenty-two hours and returned a verdict two and one-half hours post-instruction); *State v. Bogardus*, 176 N.W. 327, 329 (Iowa 1920) (holding there was no coercion where jury returned a verdict one and one-half hours post-instruction).

With respect to the third consideration, the jury poll did not reveal any evidence of coercion or potential coercion. "The purpose of polling the jury is to determine that the verdict returned is actually the verdict of each individual member." *Davis*, 975 N.W.2d at 20 (quoting *State v. Morelock*, 164 N.W.2d 819, 823 (Iowa 1969)). In this case, each juror was polled in open court before the judge, the prosecutor, defense counsel, and the defendant and asked, "[I]s this

your verdict?" Each juror responded with "it is" or "yes." As in *Davis*, "neither party nor the trial court judge identified any hesitation, comments, or body language from the jurors during polling that would indicate coercion." 975 N.W.2d at 21.

In sum, we conclude this case is materially indistinguishable from our recent decision in *Davis*. As in *Davis*, the most relevant facts and circumstances do not support the conclusion the district court's verdict-urging instruction coerced or potentially coerced the jury's verdict. Instead, the record reflects the district court issued an instruction with appropriate content. After receiving the instruction, the jury resumed deliberations for an additional three and one-half hours, which our precedents hold is sufficient to demonstrate they commenced a train of new deliberations to resolve their prior disagreement. After the jury returned its verdict in open court, each of the jurors affirmed the verdict without any hesitation.

B.

The court of appeals reached a different conclusion. The court of appeals held the jury's verdict was coerced, vacated Church's convictions, and remanded the case for a new trial. In reaching the conclusion that the jury's verdict was coerced, the court of appeals attempted to distinguish *Davis*. The court of appeals focused its attention on the timing of the jury's verdict, the jury's disclosure of their numerical division to the district court, and the majority jurors' purported feelings of "open hostility toward [the] lone holdout juror." We conclude the court of appeals erred in its analysis.

With respect to the timing of the jury's verdict, rather than focusing on the absolute length of the jury's post-instruction deliberations, the court of appeals focused on the "more intricate gauge" of the "ratio of the deliberations before and after" the verdict-urging instruction. In *Davis*, we did recognize that some of our

cases have "looked at the ratio of 'the time spent in deliberation before, and the duration of the deliberations after, such an instruction was given.' " 975 N.W.2d at 20 (quoting *State v. Peirce*, 159 N.W. 1050, 1054 (Iowa 1916), *abrogated on other grounds by State v. McLaughlin*, 94 N.W.2d 303 (Iowa 1959)). However, in *Davis*, we stated the ratio was a "less relevant" consideration than the absolute length of the jury's post-instruction deliberations. *Id.* Regardless, relying primarily on *State v. Peirce*, 159 N.W. 1050, the court of appeals concluded that the ratio of pre- and post-instruction deliberations in this case "point[ed] to coercion and prejudice."

*Peirce* does not support the court of appeals' coercion analysis for two reasons. First, *Peirce* announced a presumption of prejudice not applicable here. In *Peirce*, "the jury had been kept together some 13 days and had been deliberating upon its verdict some 48 hours." *Id.* at 1054. "It stood three for acquittal and nine for conviction when the additional instruction was given, and returned a verdict of guilty in something less than 4 hours thereafter." *Id.* The *Peirce* court conducted a thorough review of the relevant cases and concluded that "where the disagreement is of more than ordinary and usual duration," a presumption of prejudice arises if the "verdict is reached in a time short in comparison." *Id.* at 1055. In this case, the jury's pre-instruction deliberations of thirteen hours were not of more than ordinary and usual duration than one would expect in a multi-count case involving first-degree murder and a justification defense. The presumption of prejudice articulated in *Peirce* is inapplicable here.

Second, the critical fact in *Peirce* was not the ratio of pre- and post-instruction deliberations. Instead, it was the fact that the jury was confined over the weekend and had to reach a verdict to avoid continued confinement for an additional day:

> After some 48 hours of disagreement three stood for acquittal when the instruction was given. That it was late on Saturday night. That it got into the jury room the trial judge had gone home and out of town for over Sunday, and that, while there was a judge in town, he could only act to receive a verdict. It fairly had conveyed to it the idea that failure to agree meant confinement over Sunday at least.
>
> We think this raises a presumption of prejudice.

*Id.* In stark contrast, in this case, the jury was not confined, and the jury returned its verdict on a Thursday in the middle of the afternoon. Unlike the jury in *Peirce*, the jury in this case was not subject to continued restraint over the weekend to reach a verdict.

The court of appeals also focused its attention on the fact that the jury disclosed its numerical division to the district court. The mere fact that the jury made the district court aware that the members were split 11–1 does not support the conclusion that the district court's verdict-urging instruction was coercive or potentially coercive. We addressed a similar issue in *State v. Piper*, 633 N.W.2d 894. In that case, the jury "sent a note to the judge stating, 'We are a hung jury. Ten guilty; two not guilty.' " *Id.* at 911. The district court ordered the jury to continue deliberations, and two hours later the jury returned a guilty verdict. *See id.* On appeal, we concluded the jury's verdict was not coerced even though the numerical division "was volunteered by the foreperson in the notes sent to the trial judge." *Id.* at 912. Critically, as in this case, "the court did not inquire into the voting breakdown." *Id.* Courts throughout the country are in accord with *Piper* and conclude that giving a verdict-urging instruction is not reversible error merely because the trial judge inadvertently learned of the numerical division of the jury, including where the jury was divided 11–1. *See, e.g., United States v. Santiago*, 834 F. App'x 417, 418 (9th Cir. 2021); *United States v. Lorenzo*, 43 F.3d 1303, 1307 (9th Cir. 1995); *United States v. Norton*, 867 F.2d 1354, 1364–65 (11th Cir. 1989); *United States v. Hotz*, 620 F.2d 5, 7 (1st Cir. 1980); *Sanders v.*

*United States*, 415 F.2d 621, 631–32 (5th Cir. 1969); *Drayton v. State*, 778 S.E.2d 179, 182, 183–84 (Ga. 2015); *Jackson v. State*, 782 S.E.2d 287, 292–93 (Ga. Ct. App. 2016); *Henson v. Commonwealth*, No. 2020–SC–0343–MR, 2021 WL 5984690, at *14–15 (Ky. Dec. 16, 2021); *Barnett v. State*, No. 2012, Sept. term, 2019, 2021 WL 1040498, at *6 n.4 (Md. Ct. Spec. App. Mar. 18, 2021); *People v. Parker*, No. 263276, 2007 WL 486485, at *5 (Mich. Ct. App. Feb. 15, 2007) (per curiam); *State v. Blackwell*, 747 S.E.2d 137, 142 (N.C. Ct. App. 2013); *Commonwealth v. Greer*, 951 A.2d 346, 360–61 (Pa. 2008); *Draper v. State*, 335 S.W.3d 412, 415, 417–18 (Tex. App. 2011); *State v. Evans*, No. 18–1044, 2020 WL 1487808, at *7–8 (W. Va. Mar. 23, 2020).

The court of appeals recognized that the district court's knowledge of the numerical division did not, in and of itself, prohibit the verdict-urging instruction. In the court of appeals' view, however, there was more: Not only was the district court aware the jury was split 11–1, but the district court was also aware the majority jurors had expressed "animosity" toward the lone holdout. In particular, the court of appeals found that the jury's notes "disparaged" the lone holdout, that the notes had a "harsh tone," that the jury "revealed open hostility toward a lone holdout juror," and "that the jury had turned its ire on the lone holdout." The notes were "an unusually open expression of animosity from the majority jurors toward the lone holdout." In the court of appeals' view, the district court's awareness of the majority jurors' open hostility toward the lone holdout supports the conclusion that the jury's verdict was coerced.

We conclude the court of appeals erred in two respects. First, the record does not support the court of appeals' characterization of the majority jurors' feelings toward the holdout juror. The jury's notes to the district court stated that a single juror was "failing to follow," "refusing to follow," and "deliberately not following" the district court's instructions, a point the jury determined by

vote. The notes were direct, but they do not evidence "disparagement," "hostility," "ire," or "an unusually open expression of animosity." Neither the district court nor the attorneys characterized the majority jurors' views in this way after receiving the notes from the jury. In Church's motion for new trial, he did not characterize the majority jurors' views in this way. Even on appeal, Church does not characterize the majority jurors' views in this way. The court of appeals took artistic license here, but the picture painted lacks fidelity to the record and the parties' arguments.

Second, the court of appeals' focus on the purported ire of the majority jurors missed the relevant inquiry in analyzing a verdict-urging instruction. The psychological pressure jurors place on each other to try and reach a unanimous verdict is inherent in the jury process. "No doubt, jurors in a minority position always feel some form of pressure to bow down to the will of the majority." *Greer*, 951 A.2d at 361. Similarly, jurors in the majority also "feel pressure to switch views, if only to get the matter over with." *Id.* In determining the propriety of a verdict-urging instruction, however, we are not so concerned with the inherent psychological pressure jurors place on each other during deliberations. *See id.* ("These sorts of ephemeral psychological pressures are both inherent in the jury function and difficult to measure. . . . [W]e should tread carefully before allowing speculation about such effects to control the relevant jurisprudence."). Instead, we are more concerned with whether "*the instruction* improperly coerced or helped coerce a verdict." *Campbell*, 294 N.W.2d at 808 (emphasis added). And, in particular, whether *the instruction* encouraged jurors to abandon their conscientiously held positions.

This distinction is evident in the primary case upon which the court of appeals relied, *Smalls v. Batista*, 191 F.3d 272 (2d Cir. 1999). *Smalls* did not conclude the jury's verdict was coerced due to psychological pressure and

small-group dynamics inherent in the jury process. The verdict-urging instruction in *Smalls* was found defective only because it "failed to include instructions reminding jurors not to abandon their conscientiously held views, even if holding firm would leave a minority of the jurors unconvinced." 191 F.3d at 280. It was the "lack of cautionary language . . . that render[ed] the charge coercive and a violation of Smalls' constitutional rights to due process and a fair trial." *Id.* As discussed above, that instructional defect is not present in this case.

III.

For these reasons, we vacate the decision of the court of appeals, and we affirm Church's convictions.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**