## 71133. SMITH v. THE STATE.
### (342 SE2d 769)

BEASLEY, Judge.

Smith was tried before a jury on an indictment which alleged six counts of child molestation of the same young girl and was convicted of four counts.

1. Appellant asserts that the trial court erred in denying his general demurrers to the four counts of child molestation in the indictment for which he was convicted, on the basis that these counts do not charge a crime under the laws of this state. OCGA § 16-6-4.

Count two accused Smith of observing Patricia in the use of a mechanical vibrator device on her genital area.

Count three accused Smith of showing to and describing the use of a condom to Patricia in the presence of another child, with the children observing Smith having a sexual erection while describing the condom.

Count four accused him of sitting on the bed on several occasions with Patricia and other girls and fondling her legs.

Count six alleged that Smith fondled Patricia's breast while comparing to and fondling his own daughter's breast in the presence of another young girl friend.

All four of the challenged counts in the indictment include the allegation that the acts were immoral and indecent and were done with the intent to arouse and satisfy the sexual desires of the child or children and of himself. They charge the offenses in the language of OCGA § 16-6-4 and provide the defendant with a detailed description of the particular acts constituting the violations of the statute. " 'An indictment which charges the offense defined by a legislative act, in the language of the act, where the description of the acts alleged as constituting the offense is full enough to put the defendant on notice of the offense with which he is charged is sufficiently specific.' " Gaines v. State, 80 Ga. App. 512, 517 (56 SE2d 772) (1949). To be good, the counts. at issue must state the offenses charged in detail sufficient to give Smith ample opportunity to prepare a defense. Morris v. State, 166 Ga. App. 137, 139 (1) (303 SE2d 492) (1983).

Whether or not the evidence applied to the acts charged provided

the necessary elements for a violation of OCGA § 16-6-4, including the specific intent, would be for the jury to determine.

An examination of each of the four charges shows that the acts may be "acts which offend against the public's sense of propriety." *Chapman v. State*, 170 Ga. App. 779, 780 (318 SE2d 213) (1984). As explained in *Chapman*, the Georgia law against child molestation proscribes acts which offend against this public sense of propriety as well as affording protection to a child's body in those cases where the act or acts are more suggestive of sexually oriented misconduct than simply assaultive in nature. A child's mind may be victimized by molestation as well.

Smith's demurrers were properly denied.

2. Appellant asserts that the evidence does not support the verdicts and thus the trial court erred in denying his motion for new trial.

Viewing the evidence most favorably towards the verdict as we must, *Adams v. State*, 255 Ga. 356, 357 (1) (338 SE2d 860) (1986), it showed the following pattern of sexual misconduct: Smith got Patricia into his bedroom and touched her between her legs. Smith watched her and his daughter and other of their friends while the children used a mechanical vibrator on their genital areas. The vibrator was kept in Smith's room and the children would use it every time they went to the Smith home. While in his bedroom, Smith showed Patricia, his daughter and another friend a condom and described and explained how it worked; during the explanation, Patricia observed Smith having a sexual erection. At times, Smith would sit between Patricia and his daughter on the daughter's bed and rub the girls' legs with his hand. Smith touched Patricia's breasts and compared them with those of his daughter and another one of the daughter's young friends. Every time Patricia and his daughter undressed in the latter's bedroom, Smith would unlock the bedroom door to watch; he would rub Patricia's "fanny" and put his hands on her panties. He would serve the children refreshments while they watched adult movies containing nudity and were exposed to adult magazines. Smith made it a point to stay around the young girls when they were visiting his home and instructed the girls not to tell Mrs. Smith about the movies and the magazines.

Nine young girls between the ages of nine and thirteen related substantially the same instances of sexually related activity. A caseworker who had investigated the allegations of child molestation and who had spoken individually with the children as well as with their parents, and who had had four group meetings with the children, found them to be distraught, crying, and wanting answers.

Also a clinical psychologist was called as a rebuttal witness by the state. She had seen professionally over one hundred children who had

been sexually molested. In that capacity she saw four of the young girls who testified at trial. She stated that each child evidenced a number of factors typically seen in child molestation victims, factors such as guilt, anxiety and fear.

Here, the intent to commit the acts charged was a crucial element; it was a question for the jury. The jury was charged on the law of the case and heard all the evidence. It had to decide if Smith's conduct in each instance was or was not with the evil intent proscribed and whether or not, taken in context, it was immoral or indecent. "Weighing the evidence and assigning the truth is best done by a jury of the vicinage. What that jury establishes by its verdict from an evaluation of the whole and determines to be the truth of the matter in controversy ought to be accepted. . . . We find ample support for a finding that the [pattern of] conduct manifested by appellant was contrary to conscience, or moral law, and was inimical to public welfare according to the standards of society as perceived by the jury, and that the [pattern of] conduct did not conform to generally accepted standards of morality indeed tended toward or was an act generally viewed as morally and sexually indelicate, improper and offensive." *Chapman v. State*, supra at 780.

A rational trier of fact could have found Smith guilty of the four counts of child molestation beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Chapman v. State*, supra.

The trial court was authorized to deny appellant's motion for new trial based upon a claim of insufficiency of the evidence.

3. Appellant maintains that the court erred in denying his motion for a directed verdict as to count two.

A defendant is entitled to a directed verdict only where there is no conflict in the evidence, and the evidence introduced with all reasonable deductions and inferences therefrom demands a verdict of acquittal. OCGA § 17-9-1. The facts in this case relative to the charge in count two do not meet this rigorous standard. "The phrase 'any immoral or indecent act' must be taken in conjunction with the requisite element that the act be committed with the intent to arouse or satisfy sexual desires. [Cit.]" *Houck v. State*, 173 Ga. App. 388 (1) (326 SE2d 567) (1985).

4. In a Second Special Demurrer to the indictment, Smith alleged that the child molestation statute is "so vague and indefinite as to not give the Court any guidelines as to what constitutes '. . . an immoral and indecent act . . .' " in violation of the federal and state constitutions. The court denied the constitutional challenge. On appeal, Smith enumerates as error the court's failure to find the statute so vague as to render it unconstitutional under both constitutions.

At the time he filed his brief in this court, he also filed a motion

to certify that question to the Supreme Court of Georgia under Art. VI, Sec. IV or, in the alternative, to transfer the whole case there, due to that court's jurisdiction over certain constitutional questions. Art. VI, Sec. VI, Par. II (1).

We declined to certify the question or to transfer the case. Considering the question and the argument in support of it, jurisdiction lay here.

Smith argues that the statute is unconstitutionally vague on its face, in violation of both constitutions. The question has been settled by *McCord v. State*, 248 Ga. 765 (285 SE2d 724) (1982). There, the same claim was made and ruled upon, so that decision controls here, and there was nothing to certify or transfer. We need only apply it. His argument is that the convictions for the acts alleged here illustrate that the statute is too vague. We conclude in other divisions of this opinion that the statute proscribes the conduct charged and proved here, and he does not make the claim that the statute is too broad. He claims only that the statute is too vague because it does not give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and also that it does not inform a court which must apply it, what conduct is forbidden. But the Supreme Court has already decided that the phrase "any immoral or indecent act," used in conjunction with the element "with the intent to arouse or satisfy the sexual desires of either the child or the person" is sufficiently definite and not subject to the attack of vagueness. Part of its conclusion rests on the fact that the term "indecent condition or act" withstood a similar attack in *Scarborough v. State*, 231 Ga. 7 (200 SE2d 115) (1973). In that case, indecent condition was construed to mean "such as to offend public decency." Id. at 8. So that definition is imported into the child molestation statute. If Smith wishes to launch a broadness attack on constitutional grounds, he has not done so. However, he has asserted a related argument in the context of the general demurrer, which claimed that the acts alleged in the indictment are not criminal, on the face of it. See Division 1.

The only thing that might have made this question transferable or certifiable would have been if the Supreme Court based its decision on only one of the constitutions, thus leaving open the question as to the other. That does not seem to be the case, although the decision does not clearly state the matter. It speaks only of "constitutionality." But the test it applies is bottomed on what it calls "the first essential of due process of law." *McCord*, supra at 766. The cases it cites do not make a distinction between the two constitutions, and the approach in them as well as *Scarborough* is to find a violation of fundamental common law, which must be said to be embraced in both con- stitutions.

In *City of Atlanta v. Southern R. Co.*, 213 Ga. 736, 738 (101

SE2d 707) (1958), the petitioner had invoked both the state and federal constitutions, claiming vagueness. The Court referenced case law to conclude the act enforceable and relied on the "first essential of due process" quoting from *Hayes v. State,* 11 Ga. App. 371 (75 SE 523) (1912) and AmJur. *Hayes* recognizes the principle as one of common law, looking to other authorities and other states in support of this proposition. It does not raise or rule on a constitutional basis. Id. at 375-378.

*Scarborough,* supra, speaks of a "constitutional attack" but does not designate whether it is considering only one or both constitutions. However, it does not reach the constitutional question but rather decides the case on the basis that the evidence was insufficient to support the verdict.

The decision in *Anderson v. Little &c. Funeral Home,* 242 Ga. 751, 753 (251 SE2d 250) (1978), again refers only to unconstitutional vagueness and finds the language not violative of the "first essential of due process of law" described in *Hayes,* supra.

Since it appears that *McCord* determines constitutionality under both constitutions, it controls as to both challenges which Smith makes.

Appellant has provided no bases upon which to reverse his convictions for child molestation; they stand.

*Judgment affirmed. Deen, P. J., and Pope, J., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

I concur fully with the majority opinion. Certain factual details should be noted, however. The testimony in this case shows that a ladder led up to the attic, where there was a mattress which had curtains around it. Dirty pictures hung on the curtains, and there were also movies and copies of *Playboy* and *Penthouse* magazines. The young girl who had allegedly been molested said that her friend told her "it was her and her daddy's place," a place of sexual sanctuary.

She said that many of the pictures showed naked men and women who "were on top of each other." Some of the movies the children watched, she said, were "Heavy Metal" and "Clockwork Orange." She described "Heavy Metal" as a nasty cartoon which showed "naked ladies and men," and they would be killing each other and some would be on top of one another. "Clockwork Orange," she said, showed naked ladies and "they got killed."

Appellant was quoted as saying the movies and magazines were sexually "educational" but claimed that most of the magazines belonged to someone else. Compare *Megar v. State,* 144 Ga. App. 564, 568 (241 SE2d 447) (1978). The jury might have made the inference in the instant case that the magazines were used to get the young girls

in the mood for the subsequent commission of other acts of child abuse, as outlined in the majority opinion, or they may have considered that the showing of the movies and magazines to the young girls were independent acts of molestation and abuse of little children.

The recent case of *Terry v. Houston County Bd. of Education*, 178 Ga. App. 296 (342 SE2d 774) (1986), involved the "R" rated movie, "Blue Thunder," shown to 4th and 5th grade classes. This film contained profanity and brief scenes of nudity and violence. This court held that the teacher was guilty of neglect of duty, or negligence, but not of "wilful neglect of duty." There is no evidence in the instant case that "Heavy Metal" or "Clockwork Orange" was rated "R," as was "Blue Thunder," yet the evidence is clear here that the acts of the appellant in the case at hand were intentional and wilful as to the showing of the movies and magazines.

DECIDED MARCH 18, 1986.

*G. Terry Jackson*, for appellant.
*J. Lane Johnston, District Attorney*, for appellee.