In the Supreme Court of Georgia

Decided: November 17, 2014

S14A0887. PARKER v. THE STATE.

THOMPSON, Chief Justice.

A jury convicted appellant, Samuel L. Parker, of malice murder and other crimes in connection with the disappearance of his estranged wife, Theresa Parker.[1] His motion for new trial was denied, and he appeals, asserting that the trial court erred (1) in denying his motion to suppress evidence obtained during a warrantless search of his property; (2) by permitting the State to present similar transaction evidence; and, (3) by giving the jury an Allen charge on the

[1] The crimes occurred between March 21, 2007 and March 22, 2007. Appellant was indicted by a Walker County grand jury on February 5, 2008, on charges of malice murder, false statements, computer invasion of privacy, and violation of oath by a public officer. After a two week jury trial, appellant was found guilty of murder, false statements, and violation of oath by a public officer. He was sentenced on September 3, 2009, to life for his murder conviction, a five year concurrent term of imprisonment for his false statements conviction, and a five year concurrent term of imprisonment for his conviction for violation of oath by a public officer. His motion for new trial was filed on September 8, 2009. An amended motion for new trial was filed on April 4, 2012 and denied in an order entered April 20, 2012. A notice of appeal was filed on May 16, 2012. The appeal was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

fourth day of deliberations. Finding no error, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence showed that appellant was a police officer for the City of LaFayette, Georgia, who had a history of abusing the victim both verbally and physically and of exhibiting violent behavior and making threats against others. In March 2007, the victim, a 911 operator who was in the process of divorcing appellant, disappeared in the course of moving some of her belongings from the marital home to a new apartment. At approximately 10:30 p.m. on the evening of March 21, 2007, while at her new apartment, the victim called Rhonda Knox, a close friend and co-worker. During their conversation, the victim told Knox that she planned to drive back to the marital home for the night but was waiting until after she believed appellant would be asleep in order to avoid a confrontation with him. Previously, the victim had told Knox she was afraid of appellant.

Around 6:00 a.m. the next morning, Knox received a phone call from the victim's cell phone. The call ended seconds later without any communication and Knox's subsequent attempts to reach the victim, by calling both the victim's cell phone and home phone numbers, failed. Concerned, Knox asked a friend

2

at the Walker County Sheriff's Department, Deputy Shane Green, to ride by the marital residence to check on the victim. Shortly thereafter, Deputy Green and Deputy Corey Griffin arrived at the marital residence and knocked on the front door. Receiving no response, the deputies used flashlights to make their way around the side of the house to a detached garage. Appellant's gray truck was parked outside next to the garage and, although the garage doors were closed and locked, Deputy Green peered through a crack between the doors and, using his flashlight, was able to see appellant's patrol car parked on the left side. The deputy was also able to ascertain that the victim's vehicle was not inside the garage at that time.

Earlier on the morning of March 22, at approximately 2:00 a.m., appellant went to the home of an acquaintance, Christy Bellflower. While there, appellant used Ms. Bellflower's cell phone to call Ben Chaffin, a fellow police officer. During their phone conversation, appellant told Chaffin that he had "shot Theresa through the head" and that he had a place where they would never find her. He also threatened to kill Chaffin if Chaffin told anyone about the murder. Appellant eventually left Bellflower's house around 5:00 a.m.

After the victim was reported missing on March 24, 2007, GBI crime

scene investigators searched appellant's home and found the victim's vehicle parked in the detached garage. Both appellant's DNA and the victim's blood were discovered in two small spots on the rear bumper of the victim's vehicle. Several days later when appellant went to the hospital seeking treatment for a leg injury, appellant repeatedly stated that he had been in the woods looking for his "dead wife" even though the victim's whereabouts and status were unknown at that time. Despite the absence of a body, appellant was arrested on February 4, 2008, and charged with his wife's murder and other offenses related to her disappearance.

Prior to trial, the State filed a notice of intent to present similar transaction evidence and, on motion by appellant, the trial court held a pre-trial hearing to determine its admissibility. Over appellant's objection, the trial court ruled that evidence of prior difficulties between appellant and the victim, as well as four similar transactions involving appellant and other family members, was admissible.

Consequently, during the trial, the State was permitted to present evidence of two domestic violence incidents involving appellant and the victim. Evidence was presented that on May 4, 2002, police responded to a domestic

4

disturbance at the marial residence where they found appellant intoxicated and enraged, shouting and cursing that the victim had been unfaithful. Women's clothing and personal items were strewn about the yard and the victim was crying with a red mark on her face. Although the victim claimed she scratched herself in the face, she indicated a desire to spend the night somewhere else. Subsequently, an incident occurred in Panama City Beach, Florida, on April 27, 2003 while appellant and the victim were on vacation. According to the evidence, appellant became enraged while at a restaurant and threatened to handcuff himself to the victim, kill himself, force her to drag around his dead body and possibly kill her, too. As they left the restaurant parking lot, appellant fired a shot from his revolver out of the car window. Police were called, and they arrived to find the victim visibly shaken and crying. Appellant, on the other hand, was intoxicated and acting in a demeaning and aggressive manner. Although admitting he had threatened to kill himself, appellant initially denied firing, or even having, a weapon. Upon further investigation, however, two guns belonging to appellant were recovered by the officers and it was determined that one appeared to have been recently fired. Based on appellant's actions and his suicidal statements, the officers had appellant involuntarily

5

admitted to a mental health facility for a 72 hour observation period. While being transported to the hospital, appellant bragged to the officers that due to his experience in law enforcement, he could hide a body where no one would find it.

The trial court also allowed the admission of similar transaction evidence which included two incidents involving appellant's violent treatment of his former wife, Keila Beard, and two incidents in which appellant allegedly threatened other family members, including the victim's mother and his ex-sister-in-law. Appellant's former wife testified that on one occasion during their marriage after she questioned him about speaking to a woman at a convenience store, appellant grabbed her by her hair, dragged her through broken glass into their bedroom, and handcuffed her to the bed post. She also testified that on another occasion after she and appellant had separated, appellant came to her house, used a key to enter without her permission, accused her of trying to pick up men, pinned her down on the couch, strangled her, held his service revolver to her head, and threatened to blow her brains out. After the attack she claimed he told her not to tell anyone or he would kill her and they would never find her body.

Tabitha Thomas, the victim's former sister-in-law, also offered testimony that appellant had threatened to kill her, along with her new husband and her children, if she continued to try to recover child support payments from her ex-husband. According to Ms. Thomas, appellant stated he would kill her family and bury them where no one would ever find them. On yet another occasion, appellant similarly threatened Claire Careathers, the victim's mother, that if she or her boyfriend ever came onto his property, he would kill them and bury them where no one would find them.

Following a two week trial, the jury deliberated for four days without reaching a verdict. On the fourth day, the trial court gave the jury an <u>Allen</u> charge and subsequently a verdict was returned convicting appellant of malice murder, false statement, and violation of oath by a public officer. Appellant timely filed a motion for a new trial challenging the sufficiency of the evidence and various evidentiary rulings. Slightly over a year later, the victim's partial skeletal remains were discovered in a wooded area near appellant's father's house.

Construing the evidence most strongly in support of the verdict, we conclude it was sufficient to enable a rational trier of fact to find appellant guilty

7

of the crimes for which he was convicted beyond a reasonable doubt.  Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  Appellant argues that the trial court erred in denying his motion to suppress/motion in limine seeking the exclusion of evidence he claims was unlawfully obtained in violation of the Fourth Amendment to the United States Constitution.  Specifically, appellant asserts that by peering through a crack in the locked doors of a detached garage at the shared marital residence while conducting a safety/wellness check on the victim, the deputies unlawfully trespassed on appellant's property in violation of Fourth Amendment prohibitions.  We disagree.

"It has been repeatedly held that reasonable concern for a victim's welfare justifies a warrantless entry."  Lindsey v. State, 247 Ga. App. 166, 168 (543 SE2d 117) (2000).  See Johnson v. State, 272 Ga. 468, 470 (532 SE2d 377) (2000) (approving initial warrantless entry into shared residence of defendant and victim where officers were motivated by reasonable concern for the victim's welfare).  Under the circumstances, there was nothing improper about the deputies' initial warrantless entry onto the marital property to conduct a safety/wellness check on the victim, a point which appellant concedes.

Appellant's only challenge is to the deputies' conduct in walking over to the detached garage after failing to receive a response from inside the residence and peering into the space between the locked double doors to determine if the victim's car was present. We agree with the trial court that the intrusion complained of by appellant was minimal and that under the facts presented it was reasonable for the deputies to attempt to ascertain whether the victim was home and in need of assistance but unable to come to the door. See Johnson, supra at 470. Moreover, once the deputies determined the victim's vehicle was not on the premises and it appeared no one was home, they concluded their safety/wellness check and left. Accordingly, we find no error in the trial court's denial of appellant's motion to suppress/motion in limine.

3. Next, appellant argues the trial court erred in allowing the State to introduce similar transaction evidence and evidence of prior difficulties between appellant and the victim. He contends that because the victim's body had not been discovered at the time of trial and her manner of death was unknown, there was no proof of a logical connection between the evidence admitted by the trial court and the victim's death.

In order for similar transaction evidence to be admissible, the State is

required to show that: (1) evidence of the independent offense or act is introduced for an appropriate purpose and not to show the defendant's bad character; (2) there is sufficient evidence showing the accused committed the independent offense or act; and (3) a sufficient connection or similarity exists between the independent offense or act and the crime charged such that proof of the former tends to prove the latter. See Williams v. State, 261 Ga. 640, 642 (409 SE2d 649) (1991).[2] "In evaluating the trial court's ruling, we accept its factual findings unless clearly erroneous and review its decision to admit the similar transaction evidence under the abuse of discretion standard. [Cit.]." Johnson v. State, 294 Ga. 86, 90 (750 SE2d 347) (2013).

In each of the four similar transactions admitted in this case, appellant engaged in violent, threatening, and controlling behavior toward his then wife or other family members. Handcuffs and/or a gun were used in two of the instances and all involved a threat by appellant to kill someone and hide his or her body where no one could find it. In seeking to introduce evidence of other

_____

[2] Georgia's new Evidence Code, which allows for the admission of "evidence of other crimes, wrongs, or acts" for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" applies only to trials conducted after January 1, 2013, see Ga. L. 2011, p. 99, § 101, and is not applicable to this case.

10

offenses for the purposes of establishing motive, plan, scheme, and bent of mind, the State need show no more than a "logical connection" between otherwise dissimilar crimes. Brockman v. State, 263 Ga. 637, 640 (436 SE2d 316) (1993). Furthermore, the proper focus in determining admissibility of similar transaction evidence is on the similarity between the separate crimes and the crime in question, not the differences. See Pareja v. State, 286 Ga. 117, 121 (686 SE2d 232) (2009). In granting the State's motion to introduce this evidence, the trial court found the similar transactions involving Ms. Beard, Ms. Carruthers and Ms. Thomas were admissible to show appellant's bent of mind, common design, and scheme and that the transactions involving Ms. Beard additionally showed appellant's course of conduct. Here, the incidents were sufficiently similar and the trial court's factual findings were not clearly erroneous. We find no abuse of discretion in the trial court's admission of this evidence.

Nor did the trial court err in admitting evidence of prior difficulties between appellant and the victim.

> Unlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people

involved in the prosecution and are related and connected by such nexus. Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried. Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

Withers v. State, 282 Ga. 656, 658-659 (653 SE2d 40) (2007) (quoting Dixon v. State, 275 Ga. 232, 232-233(2) (564 SE2d 198) (2002)) (citations and punctuation omitted.). The two incidents admitted involved domestic violence situations between appellant and the victim in which police who were called to the scene found appellant intoxicated and acting in a threatening manner toward the victim over perceived interactions she may have had with other men. We find no abuse of discretion in the trial court's admission of this evidence which showed a history of domestic violence between appellant and the victim. See Johnson v. State, 292 Ga. 856, 858 (742 SE2d 460) (2013) (Evidence of defendant's prior acts toward the victim is generally admissible to show defendant's motive, intent, and bent of mind in committing the alleged crime.).

4. Finally, appellant contends the trial court deprived him of his rights to

due process and fundamental fairness as guaranteed by the United States and Georgia Constitutions by giving the jury an Allen charge on the fourth day of deliberations and improperly coercing the jury to convict him.  See Allen v. United States, 164 U.S. 492 (17 SCt 154, 41 LEd 528) (1896).  "The central inquiry in reviewing an Allen charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors."  Scott v. State, 290 Ga. 883, 888 (725 SE2d 305) (2012) (citations and quotation marks omitted).  Here, appellant has failed to identify any language in the pattern Allen charge given by the trial court that makes the instruction impermissibly coercive.  See Gamble v. State, 291 Ga. 581, 584 (731 SE2d 758) (2012) (no error in giving pattern jury charge where defendant failed to identify any potentially coercive language).  Accordingly, the instruction as given does not provide grounds for reversal and this enumeration of error lacks merit.

Judgment affirmed.  All the Justices concur.