**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 7, 2021**

# In the Court of Appeals of Georgia

A21A0948. MARSHALL v. THE STATE.

DILLARD, Presiding Judge.

McLance Marshall appeals his convictions for numerous child-sex offenses and making false statements, arguing that the trial court erred in giving coercive jury instructions (including an *Allen* charge),[1] and by failing to grant him a general demurrer as to one of the charged offenses. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows that during the summer of 2005, R. H.—a 14-year-old boy—was an active member of his

---

[1] If the jury in a criminal trial indicates that it is deadlocked, the parties "may request an *Allen* charge, encouraging the jurors to reexamine their opinions in continued deliberations as they attempt to reach a unanimous verdict." *Honester v. State*, 336 Ga. App. 166, 167 n.1 (784 SE2d 30) (2016); *see generally Allen v. United States*, 164 US 492 (17 SCt 154, 41 LEd 528) (1896).

[2] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

church and the local Boys and Girls Club. Among other things, R. H. was involved in the church's youth choir while Marshall was the choir director.[3] And during that time, R. H. was with Marshall "almost every day" without telling his parents, even though his father admonished him to stay away from Marshall.

R. H. had a troubled past, including being a gang member; but Marshall helped him to leave the gang. Marshall also encouraged R. H. not to use drugs, and they often discussed "religious matters." Additionally, Marshall bought R. H. "all sorts of stuff," including a BB gun, fireworks, a fishing pole, food, and candy. R. H. was also allowed to drive Marshall's car, even though he was too young to have a driver's license. And at some point, R. H.'s father asked him if "anything was going on" with Marshall; but R. H. chose not to disclose the relationship because he liked Marshall and did not want anyone to get hurt.

As the relationship progressed, Marshall began showing R. H. pornography. And during one of the films, Marshall asked if he could stick his penis in R. H.'s anus. R. H. refused at first, but Marshall begged him to change his mind, and eventually, he did. Afterwards, he asked R. H. to pray with him in a "praying section"

---

[3] When they first met, Marshall told R. H. to call him "Mike," but later, he disclosed his real first name. As a result, Marshall is sometimes referred to as Mike instead of McLance in the appellate record.

that he had on his floor. And after this first sexual incident, Marshall continued abusing R. H. in the same manner, including during a trip out of town when they stayed in two different hotels together. Marshall also took R. H. to the Boys and Girls Club when it was closed and engaged in sexual acts with him there, including placing his penis inside R. H.'s mouth and having R. H. touch his penis to help him masturbate.

One night, R. H.'s father dropped him off at a local community center and advised that he would pick him up around 9:00 p.m.; but R. H. was not there when his father returned because he had already left with Marshall. Later that night, Marshall drove R. H. past his parents' house because Marshall wanted to see if R. H.'s father was looking for him. And when they did so, R. H.'s father jumped in his car and chased after them; but they were going "pretty fast [and] trying to get away." Eventually, after the chase ended, R. H. went home, had an argument with his father, and ran away. R. H. then made his way to Marshall's house, and they engaged in anal sex once again.

R. H.'s father called the police to report that his son was missing. And as part of their efforts to find R. H., police detectives went to Marshall's home. After answering the door, Marshall said R. H. was not there. Even so, the detectives asked

3

if they could search the home, and Marshall responded that he needed permission from the homeowner. One of the detectives then called the homeowner, and she gave them permission to search the home. At some point during the search, Marshall asked R. H. to tell the detectives that he was there without his knowledge, but R. H. responded that he could not do that. Eventually, the detectives located R. H. hiding in the closet and wearing nothing but underwear.

Following the search, Marshall was arrested for obstruction of an officer, contributing to the delinquency of a minor, and interference with custody. Although Marshall resisted arrest at first, the detectives were eventually able to place him in handcuffs. Thereafter, Marshall was interviewed by police detectives, and he eventually admitted that he had been lying to them and disclosed his sexual relationship with R. H. Indeed, Marshall told the detectives about the specific sexual acts he engaged in with R. H. and that it had been going on for two months.[4] Marshall also blamed R. H. for his actions, telling officers that it continued for so long because R. H. "kept coming on to him."

---

[4] At trial, R. H also testified about the sexual acts he engaged in with Marshall in detail. Additionally, another victim briefly testified that—when he was 13 years old—Marshall touched him two times on his "private parts" after they met at the Boys and Girls Club.

Thereafter, Marshall was charged, via special presentment, with five counts of aggravated child molestation, four counts of child molestation, four counts of enticing a child for indecent purposes, and four counts of making false statements to police. Following a jury trial, the trial court granted Marshall's motion for a directed verdict as to one of the enticing-a-child-for-indecent-purposes charges (Count 13), but he was convicted of the remaining counts. Marshall then filed a motion for a new trial, which was denied after a hearing on the matter. This appeal follows.

1. Marshall first argues that the trial court gave coercive jury instructions—including an *Allen* charge—after being informed several times that the jury could not reach a verdict because one juror disagreed with the others. We disagree.

When a jury reports difficulty in reaching a unanimous verdict, the decision of whether to give an *Allen* charge is "committed to the sound discretion of the trial court, and we review that decision only for an abuse of discretion."[5] Indeed, the determination of whether a jury is "hopelessly deadlocked is a sensitive one best

---

[5] *Contreras v. State*, 314 Ga. App. 825, 826 (2) (726 SE2d 107) (2012); *accord Muthu v. State*, 337 Ga. App. 97, 101 (3) (b) (786 SE2d 696) (2016).

made by the trial court that has observed the trial and the jury . . . ."[6] So, bearing this deferential standard of review in mind, we turn to the specific circumstances of this case.

Following the close of evidence, jury deliberations began at 2:40 p.m. on the final day of trial and continued until 5:50 p.m., when the jury sent a note to the court, which stated, "[w]e have not been able to arrive at a unanimous decision on all counts." At this point, the trial court allowed the jury to recess for the night but instructed it to continue its deliberations the following day. Deliberations then resumed the next morning at 10:11 a.m., but less than an hour later, the jury submitted another question to the court, asking "Is it permissible (sic) for a juror to remain undecided[?]" And in response, the court advised the jury that its verdict must be unanimous. Fifteen minutes later, the jury sent another note to the court, stating, "[w]e cannot reach an agreement of guilt or innocence on Counts 1-12, 15, [and] 16."

---

[6] *Bannister v. State*, 306 Ga. 289, 296 (3) (b) (830 SE2d 79) (2019) (punctuation omitted); *accord Smith v. State*, 302 Ga. 717, 718 (2) (808 SE2d 661) (2017); *see, e.g.*, *Leonard v. State*, 275 Ga. App. 667, 669 (621 SE2d 599) (2005) ("Because evidence supported its determination that the jury was hopelessly deadlocked, the trial court did not abuse its discretion in declaring a mistrial in [defendant's] first trial.").

But again, the court instructed the jurors to "[p]lease continue your deliberations[,]" and after a lunch break, the jury did so at 1:00 p.m.

But only 30 minutes later, the jury sent another note to the judge, stating "[w]e have been unable to reach a unanimous decision on Count[s] 1-9, 15, [and] 16." Nevertheless, the trial court again instructed the jurors to continue their deliberations, which they did. Even so, just an hour later, the jury sent yet another note to the court, stating "[a] member of the jury has stated that further participation in the deliberation process will not be fruitful and that no argument can be given that will change her mind. Said jurist has not provided arguments sufficient to persuade the others." Then, outside the presence of the jury, Marshall's attorney stated, "[l]ooking at the nature of this note, they're obviously deadlocked." The trial court disagreed, stating, "[w]ell that's not my assessment of it[,]" and defense counsel preemptively objected to giving the jury an *Allen* charge. Nevertheless, the trial court overruled the objection and gave the following *Allen* charge:

> Ladies and gentlemen, you have now been deliberating upon this case for a considerable period of time and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.
>
> The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict if possible and not for

7

disagreement. It is the law that a unanimous verdict is required. While this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is, nevertheless necessary for all the jurors to examine the issues and questions submitted to them with candor and fairness with a proper regard for and deference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them. If the members of the jury differ in their view of the evidence the difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of their opinion.

Your duty is to decide the issues that have been submitted to you if you can conscientiously do so. In conferring you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for taking up and maintaining in a spirit of controversy either side of a cause. You should bear in mind at all times that as jurors you should not be advocates for either side. You should keep in mind the truth as it appears from the evidence examined in the light of the instructions of the Court. You may again retire to your room for a reasonable time and examine your differences in the spirit of fairness and candor and try to arrive at a verdict.

As instructed, the jury resumed its deliberations at 3:04 p.m., and less than 30 minutes later, the jurors reached a unanimous verdict, finding Marshall guilty as to

all counts.[7] Marshall's counsel requested that the jury be polled to confirm that the verdict was actually unanimous. The jurors were then asked the following questions: (1) "Was that your verdict?"; (2) "Was it freely and voluntarily agreed to by you?"; and (3) "Is that still your verdict?" Each juror responded "yes" to all of the questions, but one juror had to be asked twice whether her verdict was freely and voluntarily agreed to by her. But after she was asked a second time, the juror confirmed that her verdict was freely and voluntarily agreed to by her and that it was still her verdict.

Marshall argues that the trial court abused its discretion by giving an *Allen* charge under the circumstances in which it did so. In this regard, we have explained that the giving of an *Allen* charge "amounts to an abuse of discretion when the terms of the charge itself, or the circumstances in which it is given, are coercive, so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors."[8] And here, Marshall concedes that *Allen*

---

[7] As previously mentioned, the trial court granted a directed verdict on Count 13.

[8] *Contreras*, 314 Ga. App. at 826 (2) (punctuation omitted); *see Scott v. State*, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012) ("The central inquiry in reviewing an *Allen* charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (punctuation omitted)); *Lowery v. State*, 282 Ga. 68, 71 (4) (a) (646 SE2d 67) (2007) (same).

charges are legal when they are properly given, but nevertheless argues that three phrases included in the charge given by the trial court were coercive.[9] Regardless, any argument that the language of the *Allen* charge, standing alone, is coercive is meritless, "especially considering that the trial court cautioned the jury that no verdict should be based on 'a mere acquiescence of jurors in order to reach an agreement.'"[10] Furthermore, the language of the *Allen* charge given in this case is *identical* to

---

[9] Specifically, Marshall contends that the following language of the *Allen* charge is coercive: (1) "This case has been . . . submitted to you for decision and verdict and not for disagreement"; (2) "It is the law that a unanimous verdict is required"; and (3) "Each juror should listen to the arguments of other jurors with a disposition to be convinced by them." But as we explain *infra*, these phrases are included in Georgia's pattern *Allen* charge, and our Supreme Court has already approved them. Notably, Marshall admits that the trial court's instruction that the verdict must be unanimous is "technically correct."

[10] *Contreras*, 314 Ga. App. at 826 (2) (punctuation omitted); *see Wright v. State*, 274 Ga. 305, 307 (2) (553 SE2d 787) (2001) (holding that an *Allen* charge was not coercive when, in addition to the language of which the defendant complained, the court instructed the jury that "the verdict had to be the verdict of each juror; that a juror should not acquiesce in other jurors' opinions merely to reach an agreement; that all jurors should examine the issues with candor and fairness and with proper deference for the opinions of each other; that the jury should deliberate in a spirit of fairness and candor and try to arrive at a verdict; and that the jurors should examine the evidence and decide the issues if they could conscientiously do so"); *Sears v. State*, 270 Ga. 834, 838 (1) (514 SE2d 426) (1999) (holding that an *Allen* charge was not coercive when "[t]he court made it clear that, although the jurors should consider the opinions of other jurors, they must never surrender their honest opinions for the sake of expediency").

Georgia's pattern instruction regarding a deadlocked jury,[11] and our Supreme Court has already approved it.[12] Thus, to the extent Marshall contends that certain phrases in the *Allen* charge given in this case are coercive, his argument is a nonstarter. Instead, Marshall must show that the *Allen* charge was coercive due to the

---

[11] *See* Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2018), § 1.70.70 (Hung Jury).

[12] *See Bannister*, 306 Ga. at 296-97 (3) (c) (holding that the trial court did not err in giving an *Allen* charge when the charge given was "essentially the same as the pattern instruction" and there were no other circumstances to render it coercive); *Parker v. State*, 296 Ga. 199, 205 (3) (766 SE2d 60) (2014) (holding that an *Allen* charge was not coercive because the defendant "failed to identify any language in the pattern *Allen* charge given by the trial court that makes the instruction impermissibly coercive"); *see also Zerbarini v. State*, 359 Ga. App. 153, 161 (1) (b) (855 SE2d 87) (2021) (noting that Georgia's pattern charge for hung juries "provides carefully crafted language informing the jurors of their obligations to deliberate but to keep in mind the evidence and the arguments of the other jurors").

*circumstances* in which it was given.[13] In this respect, our Supreme Court has

explained that

> [f]actors in determining whether requiring further deliberations was
> coercive include the length of trial, the length of deliberations before the
> jury indicates that it is deadlocked, the language of the jury's notes, the
> progress of the jury, the language of the *Allen* charge[,] and other
> instructions regarding deliberations, the length of additional
> deliberations after the alleged coercion, whether the jury found the
> defendant not guilty of any charges, and the polling of the jury.[14]

---

[13] *See supra* note 8 & accompanying text. Although Marshall appears to concede that the *Allen* charge given in this case, standing alone, was not coercive, he nevertheless discusses several cases involving coercive language used in the trial court's *Allen* charge itself. *See Burchette v. State*, 278 Ga. 1, 2-3 (596 SE2d 162) (2004) (holding that when giving an *Allen* charge to a deadlocked jury, trial courts should no longer use language stating that the case "must be decided by some jury"); *McMillan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278) (1984) (holding that the cumulative effect of the comments made during the *Allen* charge, especially the court's statement that "I feel like there is enough evidence in this case for you to reach a verdict one way or another," were impermissibly coercive); *Sanders v. State*, 162 Ga. App. 175, 176-77 (290 SE2d 516) (1982) (holding that "instructing the jury that they would 'just have to stay in there until you [reach a verdict]' was tantamount to charging that even in the event of any conscientious and irreconcilable difference of opinion between the jurors, one or more jurors would be required to surrender his view in order to reach a verdict[,]" and explaining that a trial court may not unduly urge or press the jury to agree on a verdict). In any event, the issue before us is whether the *circumstances* under which an otherwise proper *Allen* charge was given rendered it coercive.

[14] *Smith*, 302 Ga. at 721 (2); *see Drayton v. State*, 297 Ga. 743, 749 (2) (b) (778 SE2d 179) (2015) (considering the totality of the circumstances in finding that a

Here, prior to the note that prompted it to give the *Allen* charge, the trial court instructed the jury to continue deliberations three times after receiving notes essentially stating that the jury could not reach a unanimous verdict.[15] But after the court received a fourth note, which singled out one juror who could not be persuaded, it gave the *Allen* charge over Marshall's objection. The jury then resumed its deliberations, and approximately 30 minutes later, reached a unanimous verdict, finding Marshall guilty as to all charges.

Marshall now argues that each time the trial court instructed the jury to continue its deliberations, it "implied" that the jury was required to reach a unanimous verdict or the jurors would be held at the court "indefinitely." But he provides no legal authority suggesting a trial court lacks discretion to instruct the jury

---

modified *Allen* charge was not coercive); *Sharpe v. State*, 288 Ga. 565, 568 (5) (707 SE2d 338) (2011) (explaining that considering certain factors such as polling the jury and the length of deliberations "play an important role in determining coerciveness when there is a possibility the charge could be coercive"); *Romine v. State*, 256 Ga. 521, 525-26 (1) (b) (350 SE2d 446) (1986) ("Considering the length and complexity of the trial, the length of time the jury deliberated before declaring itself deadlocked, and the amount of progress made in the interim, we find no abuse of discretion in the court's refusal to declare a mistrial.").

[15] The trial court also received a note from the jury asking if a juror could remain undecided, and the court responded that the verdict must be unanimous. While this note suggests that the jury was still deadlocked, deliberations were ongoing, and as a result, the trial court did not instruct the jury to resume deliberations.

13

to continue deliberations after being informed that it could not reach a unanimous verdict. Indeed, contrary to Marshall's argument, our Supreme Court has held that "[a] trial court, in the exercise of a sound discretion, [is] *required* to make its own determination as to whether further deliberations [are] in order."[16] Moreover, while each of the four notes indicated that the jury could not reach a unanimous verdict, the trial court "was not bound by those pronouncements."[17] Furthermore, although the trial court instructed the jury to continue its deliberations a few times, the jury notes were all sent after brief periods of time.[18] In fact, the jury only deliberated for

---

[16] *Smith*, 302 Ga. at 721 (emphasis supplied); *accord Sears*, 270 Ga. at 838 (1); *Honester*, 336 Ga. App. at 171.

[17] *Sears*, 270 Ga. at 838 (1); *see Bannister*, 306 Ga. at 296 (3) (b) (holding that the trial court did not abuse its discretion by giving an *Allen* charge instead of granting a mistrial, even though, before giving the charge, the court had instructed the jury to continue deliberations after receiving two notes from the jury indicating it was deadlocked and the jurors did not know how to resolve their differences); *Porras v. State*, 295 Ga. 412, 420 (3) (761 SE2d 6) (2014) ("To the extent that [the defendant] argues that the charges were coercive simply because they compelled the jury to continue deliberating after it reported a deadlock, the trial court was not bound to accept the jury's pronouncement of a deadlock, and the trial court instead was required to make its own determination as to whether further deliberations were in order." (punctuation omitted)); *Todd v. State*, 243 Ga. 539, 542 (1) (255 SE2d 5) (1979) (explaining that a trial court is not required to accept jury's determination that it is "hopelessly deadlocked").

[18] *Smith*, 302 Ga. at 721 (2) (listing the length of time the jury deliberates before claiming to be deadlocked as one factor to weigh in determining whether an

approximately six hours total before the court decided to give the *Allen* charge.[19]

Thus, the trial court—in the exercise of its sound discretion—was required to "make its own determination as to whether further deliberations were in order[,]"[20] and Marshall has provided no legal basis for finding otherwise.

---

*Allen* charge was coercive). As detailed *supra*, the jury deliberated for three hours on the first day of deliberations before informing the trial court it was deadlocked. And on the second day of deliberations, the jury only deliberated in the morning for approximately an hour and a half before sending its second note to the trial court, stating that it was deadlocked. Then, after lunch, deliberations only lasted 30 minutes before the jury sent another note to that effect. The trial court instructed the jury to continue its deliberations, and only an hour later, the jury sent its last, more detailed note, claiming to be deadlocked. At that point, the trial court gave the *Allen* charge. In considering the totality of the circumstances, we are not inclined to find that the trial court abused its discretion by instructing the jury to continue deliberating after such short periods of time.

[19] *See Sears*, 270 Ga. at 838 (1) (holding that the trial court did not abuse its discretion by instructing a jury to continue deliberations when the jury had only deliberated for six hours, and after giving an *Allen* charge, the jury deliberated for three more hours, even though the jury's last note to the court stated that the jury was deadlocked and "[a]ll minds [were] closed"); *Honester*, 336 Ga. App. at 172 ("Given the trial court's own description of the evidence, the relatively short length of time the jury had been deliberating before declaring itself deadlocked showed that further deliberations were called for.").

[20] *Sears*, 270 Ga. at 838 (1); *see Romine*, 256 Ga. at 525 (1) (b) ("[T]he decision of whether the jury is truly deadlocked must be taken from the sound discretion of the trial judge . . . ."); *see supra* note 16 & accompanying text.

Marshall also argues that—in considering the totality of the circumstances—there are six factors weighing in favor of finding the *Allen* charge coercive in this case. We will address each one in turn.

First, he points to three phrases in the *Allen* charge itself that he believes are coercive; but we have already noted that the challenged language has been approved of by our Supreme Court, so this argument is a nonstarter.

Second, Marshall maintains that because the *Allen* charge given in this case is not included in the American Bar Association's pattern jury charge on hung juries, this weighs in favor of finding it coercive. But again, we are bound by the decisions of the Supreme Court of Georgia,[21] not by any contrary policy pronouncements or guidelines made by a voluntary association of lawyers—even the ABA.

Third, Marshall contends that because jury deliberations after the *Allen* charge were far shorter than those before the charge this fact weighs in favor of finding the *Allen* charge coercive.[22] And to be sure, the jury only deliberated for 30 minutes

---

[21] *See* Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) ("[V]ertical *stare decisis* dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia".).

[22] *See Smith*, 302 Ga. at 721 (2) (listing the length of time between the *Allen* charge and the jury's verdict as a factor to consider in determining whether an *Allen*

following the *Allen* charge before reaching a verdict; but our Supreme Court has held that "the length of deliberations alone cannot render a non-coercive charge coercive."[23] Indeed, it is not necessary for the jury to deliberate for any particular length of time after the *Allen* charge is given "in order for the charge not to be considered coercive; other factors should be considered."[24] Moreover, the Supreme Court of Georgia has held that an *Allen* charge was not coercive under the totality of the circumstances, even though the jury deliberated for only 30 minutes after an *Allen* charge before reaching a verdict.[25] So too here. Thus, under the totality of the

charge is coercive).

[23] *Scott*, 290 Ga. at 888 (6) (punctuation omitted); *see Smith*, 302 Ga. at 721 (2) (holding that the circumstances surrounding an *Allen* charge did not render it coercive when, *inter alia*, the jury deliberated for only an afternoon before indicating it was at a "stalemate"); *Lowery*, 282 Ga. at 72 (4) (a) ("[T]he length of jury deliberations before and after the *Allen* charge and the jurors' reaffirmation of their verdict when polled—do not render a non-coercive charge coercive.")

[24] *Benson v. State*, 280 Ga. App. 643, 645 (634 SE2d 821, 824 (2006).

[25] *See Drayton*, 297 Ga. at 749 (2) (b) (holding that an *Allen* charge was not coercive under the totality of the circumstances even though the jury only deliberated for 30 minutes between being given the charge and reaching a unanimous verdict);*see also Graham v. State*, 273 Ga. App. 187, 191 (2) (614 SE2d 815) (2005) (holding that a defective *Allen* charge was not reversible error, even though "the jury spent less than an hour deliberating after the charge was given, which was substantially less than the six hours of deliberation that preceded the charge," as the court looked at other factors).

17

circumstances, we are persuaded that the length of time the jury deliberated after being given an *Allen* charge is insufficient to render it coercive.

Fourth, Marshall claims—in three conclusory sentences—that the jury convicting him of all counts, instead of only on some counts, weighs in favor of finding the charge coercive.[26] But to the extent Marshall has not abandoned this argument by failing to support it with legal authority,[27] he has not demonstrated how being found guilty of all charged offenses is sufficient to render an otherwise proper *Allen* charge coercive under the circumstances of this case. Indeed, the make up of the jury's ultimate verdict is only one of several factors to consider in determining whether an *Allen* charge is coercive,[28] and the trial court has considerable discretion

---

[26] *See Smith*, 302 Ga. at 721 (2) (listing whether a defendant is found not guilty of any charges as a factor to consider when determining whether an *Allen* charge is coercive); *Drayton*, 297 Ga. at 749 (2) (b) (noting that "the jury convicted [the defendant] on some counts but acquitted him on others" in finding that, under the totality of the circumstances, an *Allen* charge was not coercive).

[27] *See Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) ("[A]n assertion of error followed by a case citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant fact" (punctuation omitted)); *Guilford v. Marriott Int'l, Inc.*, 296 Ga. App. 503, 505 (675 SE2d 247) (2009) (same).

[28] *See supra* note 14 & accompanying text.

in weighing factors for and against finding a charge coercive.[29] Suffice it to say, given *all* the circumstances present in this case, the fact that Marshall was not acquitted of any of his charged offenses is not enough to establish that the trial court abused its discretion in giving the *Allen* charge.

Fifth, while Marshall acknowledges that polling the jury weighs against an *Allen* charge being coercive,[30] he finds it significant that one of the jurors had to be asked twice as to whether her verdict was voluntary before answering. But again, he provides no legal authority suggesting that a juror's hesitancy or reluctance to answer a question has any bearing on whether polling the jury weighs against a finding of coercion. And the juror Marshall is referencing ultimately, *under oath*, agreed that the submitted verdict was her verdict, it was freely and voluntary agreed to by her, and it was still her verdict. To be sure, this juror later told the media that she felt as though she lied when asked to confirm her guilty verdict, and she also testified at the

---

[29] *See supra* notes 5-6 & accompanying text.

[30] *See Smith*, 302 Ga. at 723 (2) (considering the fact that the jury was polled and each juror confirmed his or her verdict as one factor when finding the circumstances of an *Allen* charge did not render it coercive); *Drayton*, 297 Ga. at 749 (2) (b) (same); *Burchette*, 278 Ga. at 2 (same); *Benson*, 280 Ga. App. at 645-46 (same); *see also Porras*, 295 Ga. at 420 (3) ("That the jurors individually confirmed their verdict when polled also suggests that the charges were not coercive.").

motion for new trial hearing that she felt pressured to change her verdict. But aside from certain inapplicable exceptions, "[l]ongstanding common law principles [and OCGA § 24-6-606 (b)] prohibit using juror statements or testimony to impeach their own verdict."[31]

Lastly, Marshall argues that another factor weighing in favor of finding the *Allen* charge coercive is the lack of direct or physical evidence supporting his convictions. But he has not provided any legal authority indicating that the strength of the evidence has any bearing on the question of whether an *Allen* charge is coercive, and we have found none to support his claim. And importantly, the strength

---

[31] *Collins v. State*, 308 Ga. 608, 610 (2) (842 SE2d 811) (2020); *see* OCGA § 24-6-606 (b) ("Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form."); *see also* Ronald L. Carlson & Michael Scott Carlson, *Carlson on Evidence*, p. 272 (6th ed. 2018) ("[OCGA § 24-6-606 (b)] discourages investigations into jury verdicts in favor of generally restricting testimony to matters such as outside influence or mistakes in entering the verdict onto the verdict form. To justify a post-trial hearing involving Rule 606 (b) evidence, a party must show clear, strong, substantial[,] and incontrovertible evidence that a specific, nonspeculative impropriety occurred.").

(or lack thereof) of the evidence is not listed by our Supreme Court as being among the factors we are charged with considering in determining whether an *Allen* charge is coercive.[32]

In sum, in light of the broad discretion a trial court has in deciding whether to give an *Allen* charge, and considering that there were several factors supporting the court's decision, we cannot say that it abused its considerable discretion in giving the *Allen* charge under the circumstances in which it did so.[33]

2. Next, Marshall argues that the trial court erred in failing to grant him a general demurrer as to Count 9 of the indictment. Again, we disagree.

---

[32] *See* note 14 & accompanying text.

[33] *See Bannister*, 306 Ga. at 296 (3) (b) ("[T]he determination of whether a jury is "hopelessly deadlocked is a sensitive one best made by the trial court that has observed the trial and the jury . . . .") (punctuation omitted)); *Smith*, 302 Ga. at 718 (2) (same); *Lowery*, 282 Ga. at 72 (4) (b) (2) (holding that the trial court giving an inaccurate *Allen* charge did not constitute reversible error and reiterating that the decision of whether to give such a charge is in the trial court's discretion); *Mayfield v. State*, 276 Ga. 324, 330 (2) (b) (578 SE2d 438) (2003) ("The decision of whether to give an *Allen* charge is within the discretion of the trial court."). *Cf. Leonard*, 275 Ga. App. at 669 ("Because *evidence supported* its determination that the jury was hopelessly deadlocked, the trial court did not abuse its discretion in declaring a mistrial in [defendant's] first trial." (emphasis supplied)).

An accused may challenge the sufficiency of an indictment by "filing a general or special demurrer."[34] Indeed, a general demurrer, which Marshall sought here, "challenges the sufficiency of the substance of the indictment, whereas a special demurrer challenges the sufficiency of the form of the indictment."[35] Nevertheless, an indictment shall be "deemed sufficiently technical and correct to withstand a general demurrer if it states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury."[36] In other words,

> if an accused would be guilty of the crime charged if the facts as alleged in the indictment are taken as true, then the indictment is sufficient to withstand a general demurrer; however, if an accused can admit to all of the facts charged in the indictment and still be innocent of a crime, the indictment is insufficient and is subject to a general demurrer.[37]

Lastly, this Court reviews a trial court's ruling on a general or special demurrer *de novo* in order to "determine whether the allegations in the indictment are legally

---

[34] *State v. Harlacher*, 336 Ga. App. 9, 10 (783 SE2d 411) (2016).

[35] *Id.* (punctuation omitted).

[36] *Id.* (punctuation omitted).

[37] *Id.* (punctuation omitted).

sufficient."[38] With these guiding principles in mind, we turn to Marshall's specific claim of error.

OCGA § 16-6-4 (a) (1) provides: "A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent *act* to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ."[39] And Count Nine of Marshall's indictment charged him with child molestation in that

> . . . between the 2nd day of May, 2005, and the 26th of August, 2005 . . . [he] did an immoral or indecent act with [R. H.], a child under the age of sixteen (16) years, by *allowing* [R. H.] to fondle and masturbate [his own] penis, with intent to arouse and satisfy the sexual desires of said accused and child, contrary to the laws of [Georgia]."[40]

Turning to the circumstances of this case, Marshall argues that the indictment is fatally defective as to Count 9 because allowing R. H. to masturbate in front of him does not constitute an affirmative "act" within the meaning of OCGA § 16-6-4 (a) (1). But other than citing one case (without explanation) and quoting the applicable

---

[38] *Id.* (punctuation omitted).

[39] (Emphasis supplied).

[40] (Emphasis supplied).

statute, Marshall provides no other legal authority showing how our appellate courts have interpreted the statute in similar cases. Even so, there *are* similar cases in which we interpreted OCGA § 16-6-4 (a) (1) to include the act of *observing* a child engaging in sexual conduct without touching him or her.[41] As a result, the trial court did not err in denying Marshall a general demurrer as to Count Nine of the indictment.

For all these reasons, we affirm Marshall's convictions.

*Judgment affirmed. Mercier and Pinson, JJ., concur.*

---

[41] *See Thompson v. State*, 187 Ga. App. 563, 563-64 (2) (370 SE2d 819) (1988) (holding that an indictment sufficiently alleged child molestation when it accused the defendant of requiring the victim to dance naked in front of him without touching her); *Smith v. State*, 178 Ga. App. 300, 300-01 (1) (342 SE2d 769) (1986) (holding that a trial court did not err in denying the defendant's general demurrer when one of the child molestation offenses accused him of "observing [the victim] in the use of a mechanical vibrator device on her genital area").